# BRIGHAM L. LITTLE, Respondent, v. SUSANNAH GIBBS and Others, Appellants.

Statutory Construction.—Implied Limitation.—Cumulative Remedy.—Section 2030 1 Comp. Laws 1888, passed in 1878, provided that the collector might levy upon and sell the real estate of a taxpayer for delinquent taxes, which became delinquent October 31 of the year in which the taxes were assessed; § 2039 1 Comp. Laws 1888, passed in 1884, provided that the county collector should settle with the clerk of the county court and make full payment into the county treasury of all taxes due on January 31 of each year and if any tax remained unpaid on January 31, the collector should have a right of action in his own right against the delinquent taxpayer; *held* that the latter statute did not limit the time within which levy and sale of delinquent's real estate could be made to a day prior to January 31 of year next after the taxes became delinquent, and that the remedy given to the collector by suit was cumulative to the remedy of levy and sale.

Appeal from a judgment of the district court of the third district. The opinion states the facts, except that all the sections of the statute quoted in the opinion were passed on February 22, 1878, except section 2039, which was an amendment passed March 13, 1884.

*Mr. Enos D. Hoge* and *Messrs. Bennett, Marshall and Bradley,* for the appellants.

*Mr. William H. Dickson,* for the respondent.

ANDERSON, J.:

This is an action by plaintiff to quiet his title to a certain described part of lot 8, in block 103, plat A,

Salt Lake City survey. The complaint alleged ownership and right of possession in the plaintiff, and that the defendants claimed an interest in the land adverse to him which was unfounded, and prayed that the adverse claims of the defendants be adjudged null and void. The defendants answered, denying plaintiff's ownership and right of possession, and alleging title in themselves. The court made its findings of fact and conclusion, and gave judgment for the plaintiff as prayed, and defendants appeal. On the 18th day of August, 1875, one Horace Gibbs died intestate, seized in fee of the property in controversy. The defendant Susannah Gibbs is his widow, and the other defendants are his children, and the defendants claim title by descent from him.

The plaintiff claims under a sale for taxes, while appellants claim the tax sale to be void. The taxes for territorial, school and county purposes for the year 1885 were not paid by the defendants, and became delinquent on the 31st day of October, 1885. The sale for the delinquent taxes was advertised to be made by the collector of taxes on the 13th day of February, 1886, and, there being no bidders, a certificate of purchase was issued to the probate judge of Salt Lake county for and in behalf of the county. The property not having been redeemed within the time required, he received a deed therefor, as provided by law, and afterwards, pursuant to an order of the county court, conveyed the premises to the plaintiff. It is not claimed that the property was not subject to taxation, nor that the assessment or the levy was illegal, nor that the requisite notice of the assessment was not given to the owners. Neither is it claimed that the collector of taxes failed to give notice of the sale as required by law, nor that the sale was irregularly, illegally, or unfairly conducted, nor that the taxes had been paid before the sale of the property, nor that the property was redeemed from the sale within the time allowed by law. The only question pre-

sented for our determination is whether the sale for taxes was illegal and void because made after the 31st of January, 1886. 1 Comp. Laws 1888, § 2012, which was adopted in 1878, provides that "the tax shall attach to and constitute a lien on the property assessed, from the day of assessment. If the taxpayer own both real and personal taxable property, the tax on the personal property shall also be a lien on the real estate. In each and every case the lien shall be paramount to all other liens whatsoever, and it shall not be removed therefrom until the tax is paid; or until the title vests thereto, under a sale thereof, by virtue of proceedings to enforce payment of the tax." By § 2028 of the same volume, it is provided that taxes shall become due on the 1st day of September in each year; and, if not paid on or before October 31 of the same year, they shall be deemed delinquent. By § 2029 it is provided that "the clerk of the county court shall attach to the duplicate corrected tax roll, to be delivered to the collector, a warrant, under his hand and seal of the county court, in the following form, viz.: * * * You are hereby commanded by the people of the Territory of Utah · to collect from each and every person * * * named in the tax roll hereunto annexed the amount of taxes therein set forth opposite their names, respectively; * * * and if any person * * * shall neglect · or refuse to pay said taxes after receiving due notice of the amounts due, and when and where payable, you are commanded to proceed against any such delinquents after the 31st day of October, as provided by law; and you are further commanded to pay the amounts which, according to the warrant and the annexed tax roll, you are required to collect, in the manner and within the time prescribed by law for the payment thereof." Section 2030 provides that, "if any person neglect or fail to pay his taxes on or before the 31st day of October, in the year the taxes are assessed, it shall be

the duty of the collector to levy upon enough taxable personal property of the taxpayer to pay the taxes and costs, and proceed to sell the same. * * * When personal taxable property of a delinquent taxpayer is not found by the collector, or, if found, is insufficient in amount to pay his taxes and costs, then the collector is also authorized to levy upon and sell any real estate belonging or assessed to such delinquent taxpayer."

The foregoing sections of the statute, in express terms, confer upon the collector full power to sell the real estate of the taxpayer for delinquent taxes, and fix no limit as to the time within which the sale shall be made, and the taxes are made a paramount lien on the taxpayer's land, which can only be removed by payment, or a sale of the property to enforce payment. But it is contended that 1 Comp. Laws § 2039, limits the time of the sale to the 31st day of January of the year following that in which the taxes are assessed. By this section it is provided that "on or before the 31st day of January in each year, the collector of each county shall settle with the clerk of the county court, and make full payment into the county treasury of all taxes due. If any tax remain unpaid to the collector on the said 31st day of January, he shall have in his own right a right of action against each delinquent taxpayer as on an express contract for the direct payment of money, and no taxable property of such delinquent shall be exempt from execution and sale on a judgment in such cases." From these provisions of the statute, in connection with others securing the equality of valuations in making the assessments, it is obvious that the intent of the legislature was that every person who owned taxable property within the Territory thould pay his just share of taxes, and that if he owned real estate his taxes should be a paramount lien thereon until paid, or until the same should be sold therefor. We think the fair and reasonable construction

of § 2012 is that the payment must be made by the delinquent taxpayer himself, in order to discharge the lien, and that a payment of the tax by the collector, as provided in § 2039, does not remove the lien in favor of the taxpayer, but satisfies the obligation of the collector imposed by the statute to pay the amount of the taxes placed on the roll; and that after the collector shall have made the payment, and not until then, he may have a personal action against the taxpayer to recover the amount paid, with interest and costs, and that this right is in addition to the power of sale for delinquent taxes given to the collector by § 2030; that, if the collector makes default in such payment into the county treasury, he may be proceeded against for such default, but that neither a payment nor default by the collector releases the property of the delinquent from the lien of the tax, nor affects the general power and duty of the collector to collect delinquent taxes by a summary sale. The object of the amendment of 1884 to § 2039 was to provide greater security and promptness in the collection of the public revenues, by requiring the collector to pay into the county treasury the full amount of all taxes due, whether collected by him or not, unless he could show to the satisfaction of the county court that he had exhausted all the taxable property, real and personal, of the delinquent taxpayer, as provided in § 2035, and was not intended to relieve the delinquent taxpayer of his tax, nor to curtail the power of the collector to collect the tax by a summary sale of property. We have been referred to the case of *Kelly* v. *Herrall,* 20 Fed. Rep. 364. This was a case under the statutes of Oregon which is different from ours in at least one important particular. By the Oregon statute it was made the duty of the county clerk, within 10 days after the return of the delinquent taxes, on the -first Monday in April, to make a correct list of unpaid taxes, and deliver the same to the sheriff of the county,

with a warrant commanding the sheriff to levy upon the goods and chattels of the delinquent taxpayer, and, if none be found, then upon so much of his real property as might be necessary to satisfy the amount of taxes, costs, and expenses, and that the sheriff should pay over all moneys so collected by the first Monday in July thereafter. Under this statute the court held that a sale of real estate for delinquent taxes, made on the Friday following the first Monday in July, was illegal and void. But there was no provision in the Oregon statute giving to the sheriff a general power to sell the property of a delinquent taxpayer without limit as to time, corresponding to § 2030 of our statute, giving such power to the collector, and hence this case is not directly in point. But, as holding contrary to the rule laid down by the Oregon court, see case of *Wells* v. *Burbank*, 17 N. H. 393.

A statute of New Hampshire, adopted in 1839, provided for the raising of the sum of $40,000 for the use of the state, to be assessed, collected, and paid into the treasury on or before the 1st day of December, 1840. No assessment was made until after that time. There was a sale of real estate made January 4, 1842, to enforce payment of this tax. In a suit involving the validity of this sale, PARKER, C. J., speaking for the court, said: "The third objection, that the tax and sale are illegal because the assessment was made after the time when the power of the treasurer to assess had terminated, cannot be sustained. It is true that the act of 1839, provides that the sum to be raised shall be assessed, collected, and paid into the treasury on or before the first day of December, 1840. But this clause relating to time must be construed as directory to the officers, and not as a limitation of time, after which no further proceedings could be had. Were this otherwise, a failure to collect by the time limited, or even a failure to pay the money into the treasury

by that time, would suspend further proceedings; for the act is as imperative that the money shall be paid into the treasury on or before the 1st day of December as it is that the assessments should be thus made. A failure to accomplish the object within the time specified might render any officer in default liable for that default, but it would not discharge the tax. This clause in the act of 1839 cannot, therefore, be construed to limit the general acts of July 1, 1831, and January 13, 1837, before cited." The acts last referred to were acts providing for the collection of taxes, containing no limitation as to time. We think the judgment of the district court ought to be affirmed.

BLACKBURN, J. and MINER, J., concurred.