REPORTS OF CASES

DETERMINED IN

# THE SUPREME COURT

OF THE

# TERRITORY OF UTAH.

DANIEL HAMER, COUNTY COLLECTOR, APPELLANT, *v.* WEBER COUNTY AND ANOTHER, RESPONDENTS.[1]

1. TAX SALES.—SALE OF REALTY FOR DELINQUENT TAXES.—LIEN. —COSTS.—Since under 1 Comp. Laws § 2012 (amended by Session Laws 1890, p. 50), delinquent taxes on real and personal property are a lien on the real estate, the fact that the county collector sells real estate of persons who also own personal taxable property without showing the necessary effort to collect the taxes out of the latter though it makes the sale voidable, does not deprive the purchaser of his lien upon the real estate of the delinquent for the entire amount of the taxes due, and if the real property is struck of to the probate judge for the county, the collector is entitled to credit for the amount of the taxes, but not to his cost for making these sales, since the county could have no valid lien for them. Bartch, J., *dissenting.*

[1] Rehearing denied. Appealed to the Supreme Court of the United States Oct. 6, 1894.

2. ID.—ID.—CERTIFICATE OF TAX SALE.—COSTS.—1 Comp. Laws 1888, § 2031, provides that where real estate is sold for taxes, the collector shall issue a certificate to the purchaser and shall file a duplicate in the office of the recorder of the county, and for real property struck off to the county, he is to make a like certificate to the probate judge and that the clerk of the county court shall credit the collector with the amount of the taxes due thereon and costs to the date of sale. Session Laws 1890, p. 50, allow to the collector for each certificate 25 cents per folio and for filing the certificate with the recorder, 50 cents. *Held*, that the collector is entitled to the folio fees for making out certificates to the county judge, but not for making out duplicates thereof.

3. ID.—ID.—LENGTH OF CERTIFICATE OF TAX SALE.—Where the form of the certificate of a tax sale is left to the discretion of the collector, in the absence of any showing that the form was fraudulently gotten up for the purpose of creating illegal charges against the county, in the absence of a statutory form, it cannot be presumed that the form was fraudulently lengthened by the officer for the purpose of extorting excessive fees. Bartch, J., *dissenting*.

(No. 517.   Decided August 31, 1894.   37 P. R. 741.)

APPEAL from the District Court of the Fourth Judicial District.   Hon. James A. Miner, *Judge*.

*Mandamus* on relation of Daniel Hamer, county collector, to compel Weber county and Joseph P. Ledwidge, county clerk of said county, to credit relator with $15,-853.57.   The court found that relator was entitled to a credit of only $8,804.63 and made the writ peremptory, from which decree relator appeals.   *Reversed*.

*Messrs. Richards & MacMillan* and *Messrs. Brown & Henderson*, for appellant.

*Mr. A. J. Weber*, county attorney (*Mr. W. L. MaGinnis*, of counsel), for respondents.

The Indiana, Kansas and Mississippi cases cited by ap-

pellant are based upon statutes wholly unlike that of Utah
upon tax liens and tax sales, all of which go to a great
length in protecting the purchasers of tax titles. The
cases cited from Nebraska and Kentucky are also based
upon statutes providing for the refunding of money paid
at void or voidable tax sales and are not applicable in this
case. In 65 out of 905 sales the collector knew that the
delinquents had personal, taxable property, but made no
effort to collect the taxes therefrom against the plain pro-
visions of Session Laws 1892, p. 30, which provides that
real estate may only be sold after the personal property
has been exhausted by levy and sale. The provisions of
the statute requiring the exhausting of personal taxable
property as a condition precedent to the sale of real estate
for taxes is mandatory. Black on Tax Titles, §§ 255–6–7;
Blackwell on Tax Titles, §§ 342–3–4; 22 Mich. 104; 67 Mich.
415. All the proceedings of the several officers who have
any act to perform with assessing the land, collecting the
tax and selling the land, must be shown to have been done
in strict compliance with the statute. Black on Tax Titles,
§§ 155, 198; Blackwell on Tax Titles, §§ 472, 475; Cooley
on Tax. pp. 470–71; 3 Washburne on Real Prop. 221,
230; Dillon on Mun. Corp. § 820; *Clark* v. *Crane*, 5 Mich.
151; 17 Mich. 437; 53 Mich. 30. Cooley on Tax. p. 531,
says: "If the tax title proves defective the purchaser will
have no lien on the land for the sum paid *unless the statute
in terms gives it.*" See, also, Cooley on Taxation, chap. 17,
pp. 550, 553. "If a tax sale is absolutely void, the pay-
ment of the tax by the purchaser stands on the footing of
a voluntary payment, not made at the request of the owner
of the land." *Harper* v. *Rowe*, 53 Cal. 233; *Axtel* v. *Ger-
lach*, 67 Cal. 483; *Treadwell* v. *Patterson*, 51 Cal. 637; Cooley
on Tax. p. 476. Black on Tax Titles, § 463, says: "At
common law the purchaser at a tax sale comes strictly and
rigidly within the rule of the *caveat emptor.*  *  *  *

And if his tax title proves to be worthless, he can not recover the amount he has paid in an action for damages against the officer, the owner, or the municipality." See, also, §§ 464, 465 and 381. Blackwell lays down the same rule, that *caveat emptor* applies to the tax title purchaser, unless he is given a remedy by statute. 2 Blackwell on Tax Titles, §§ 994–1008. In Utah we have no statute giving the tax. sale purchaser a lien for taxes and costs upon land sold at a void sale. Cooley on Taxation, 509–10; Black on Tax Titles, § 301 and cases cited. These tax sale certificates and tax sales . are defective and void for the further reason that the collector has charged excessive and illegal fees which are included in the certificates. *Treadwell* v. *Patterson, supra; Axtell* v. *Gerlach, supra.* " If a statute creates liability where otherwise none would exist, or increase a common law liability, it will be strictly construed. &ast;   &ast;   &ast;   The allowance of costs turns on the interpretation of the terms of the statute, and the intention deduced therefrom—they are strictly construed." Sutherland on Stat. Con. §§ 361– 62–63, 371. " It is a well settled rule of law that every charge upon the subject must be imposed by clear and unambiguous language." Cooley on Taxation, p. 266 *et seq.* In construing this statute we have a right to ask whether 25 cents per folio for each original and a like sum for each duplicate certificate, would be fair and just to the citizen. Blackwell on Tax Titles, §§ 1182, 1192. " Statutes of costs are construed strictly." Blackwell on Tax Titles, § 1228 and cases cited. The tax certificate is " padded;" it includes 12 folios when two folios would be sufficient to cover the four facts required to be cited therein by the statute—the non-payment of the tax, the levy upon, advertisement and sale of real estate. 1 Comp. Laws 1888, § 2031. *Van Duzee* v. *U. S.*, 59 Fed. 441. Eight-tenths of the recitals in the certificate are irrelevant.

and unnecessary, and those matters that should be stated are detailed repeatedly and with the apparent design of stretching the certificate to the greatest possible length. If the theory of defendant be tenable it makes no difference how illegal or exorbitant the collector's charges or fees may be; no difference whether the certificates are void or not. As the clerk is merely a ministerial officer, and the collector can present any kind of a certificate he pleases, it is wholly immaterial, according to the appellant's contention, what the certificates are, what they contain, or whether the collector has disregarded part of the law or all of it, the county clerk must credit him with all the collector sees fit to claim, and the collector may, at the same time, convert to his own use sufficient money to pay all costs represented on the face of the certificates, in addition to keeping out territorial and school district taxes, and even paying to himself, out of county funds, taxes due the county. The collector is to audit his own claims, say what his costs should be, pay himself out of county funds in his hands, and the county court must be a mere looker on. The county court has the power, and it is its duty " to supervise the official conduct of all county officers," etc. § 187, p. 298, Vol. 1, Comp. Laws Utah; § 196, p. 307, Vol. 1, C. L.; Sub. 12, § 187, Vol. 1, C. L.; § 208, p. 310, Vol. 1, C. L. Section 2031 does not make the tax collector an absolute autocrat, whose mandates must be meekly obeyed by both the county and its clerk. It does not give effect to the evident intention of the law to say that the tax collector is the sole judge of what is due him, that the county clerk must credit him with whatever tax sale certificates, however void they may be, regardless of the charges made which the collector may present. Section 2036 of the Comp. Laws says: " And the collector is required to pay to the county treasurer, once a month, or oftener if required by the county court,

all county funds collected by him." The county court of
Weber county required the collector to pay *all* county
funds into the county treasury on Monday of each week.
Under the statute and the order of the county court, it
was the plain duty of the tax collector to pay *all* county ·
funds into the county treasury on Monday of each week.
The order of the county court was mandatory, and the
collector can not be heard as to any excuse he may give
for evading or avoiding that order.   " It is not the right
of the collector in a suit against him for taxes collected,
to set off a demand owing to himself by the municipality
for which he acts even though it be for unpaid salary."
Cooley on Tax. p. 706; Mechem on Pub. Off. § 873;
*City of San F.* v. *Ford,* 52 Cal. 198.   "There is no im-
plied obligation on the part of the municipal or *quasi*
municipal corporations which obliges them to make com-
pensation to officers of the municipality, unless the right
to it is expressly given by law, ordinance or contract.
Such officers are deemed to have accepted their offices
with knowledge of the provisions of the charter law."
*Rowe* v. *Kern,* 72 Cal. 353; Dillon on Mun. Corp. § 229
*et seq.*  Mechem on Pub. Off. § 862; *Adams* v. *Hunter,*
63 Ia. 413; Dillon on Mun. Corp. § 234. The county
court fixed the collector's salary at $3,000 per year.
This covered everything except his actual expenditures in
advertising and making sales.

SMITH, J.:

This was a proceeding in *mandamus,* commenced by the
plaintiff in the court below against the defendants, Weber
county and Joseph P. Ledwidge, who was at the time of
the filing of the complaint, and still is, the duly elected,
qualified, and acting county clerk of Weber county, Utah.
The plaintiff was, at all times mentioned, tax collector of
Weber county.  The petition alleges, in substance, that on

the 18th, 19th, and 20th days of December the plaintiff, in accordance with the law, offered for sale at public auction, for delinquent taxes, sundry pieces and parcels of real estate; and that at such sale no person bid for the same or any part thereof; and that the plaintiff struck off the property offered for sale to the probate judge of Weber county, and issued certificates of sale in due form; and afterwards, on the 26th day of December, 1893, plaintiff tendered to defendant Joseph P. Ledwidge, as clerk of said county, such ·certificates of sale, numbering in the aggregate 905, each representing a different piece or parcel of real estate, and then and there demanded of the clerk of said county credit upon his account for the amount of taxes and costs due thereon, and represented by such certificates of sale to the amount of $15,853.57. That the defendant, as such clerk, then and there accepted the certificates of sale, but then and there refused, and still refuses, to credit the plaintiff with the amount of taxes due thereon and the costs to the date of sale, or any part thereof. The prayer is that the defendant Ledwidge be required to credit the plaintiff with the sum of $15,853.57.

Defendant answered, and denied that any sum or anything at all was due the plaintiff on the said tax certificates or otherwise by reason of the taxes or costs due thereon to the date of the sale, or for any reason at all. The answer then affirmatively alleges that no claim for the amount of the taxes and costs had been presented by the plaintiff to the county court of Weber county for allowance; and, secondly, that the tax sale certificates tendered to the defendant Ledwidge each contained not less than 12 folios of matter, and it is alleged that the certificates should not contain to exceed two folios each. For a third defense, it is alleged that the plaintiff, as collector, failed to seek out or levy upon all the taxable property of the owners of said real estate in said

certificates described, or any of them, to satisfy and pay
the taxes mentioned in said certificates, or any of them.
For a fourth defense, it is alleged that the county court,
on October 17, 1893, fixed the compensation of the col-
lector (plaintiff) at $3,000 for the year 1893.    After the
case was thus at issue, findings of fact were agreed and
stipulated by the respective parties.    The findings of fact,
without setting them out at length, show, in substance,
that the plaintiff made 905 sales of real estate for delin-
quent taxes, for which there were no bidders, and they
were struck off to the probate judge; that the amount of
taxes represented by such sales are as follows:    Territorial
taxes, $4,892.10;  county taxes, $3,913.68;  school district
taxes, $806.23.    It was also found that he paid, for pub-
lishing the delinquent list, $452.50, and, for filing 905
tax sale certificates with the county recorder, $452.50.

The tax collector claimed $5,336.56 for costs and fees
for making such sales.    These costs are claimed to amount
to $7 in each case, including the cost of publication and
filing with the recorder.    Six dollars of the charge con-
sists of 25 cents per folio for each certificate of sale and
25 cents per folio for each duplicate certificate of sale,
there being 12 folios in each.    It was also found that the
certificates contained 12 folios each.    It was also found
that the collector has presented no claim to the county
court for his fees or costs, or the amount of taxes repre-
sented by such certificates; that no part of it has ever
been allowed by the county court.    It is further found that
the compensation of the county collector was fixed for the
year at the sum of $3,000; and, in addition thereto, he
was to receive all costs and fees allowed him by law, in-
cluding costs and fees allowed him by law on tax sales,
and for making tax-sale certificates made to the probate
judge.    It was further found that 65 out of the 905 tax
sales which were made to the probate judge were sales of

property belonging to persons who had personal property assessed to them. There is no finding as to whether these parties owned any personal property at the time the taxes became delinquent or not. The amount of costs represented by these 65 certificates is $444.25. The amount of taxes represented by them is $1,689.88. As to the other 840 sales, it is found that the owners had no personal property. It is further found that the plaintiff gave bond in the sum of $82,000 for the faithful discharge of the duties of his office before entering upon said office, which said bond was duly approved by the county court of said county. The court, upon these facts, found that it was the duty of the respondent Ledwidge to credit the plaintiff with the sum of $4,041.90, territorial taxes; $3,233.54, county taxes; $646.69, special school tax; and the sum of $452.50 for publishing the delinquent list; and the sum of $420, for filing certificates with the county recorder,— making the aggregate of $8,804.63. These credits are the aggregate amount of taxes represented by the 840 certificates of sale made to the probate judge, and the costs of the publication of the delinquent list, and 50 cents each for filing the 840 certificates. The court disallowed entirely the claim for credit for the 65 certificates of sale of property belonging to the persons who were assessed for personal property, and also refused to allow any costs or fees for making out certificates of sale, but found, as a conclusion of law, that this claim should be presented to the county court for allowance. From this judgment, disallowing and refusing to compel the defendant to credit the plaintiff with the full amount claimed, plaintiff appeals.

The first question which we deem proper to discuss is whether or not the plaintiff should be credited with the amount of taxes represented by the 65 certificates of sale in cases where the owners had personal property assessed to them. There is no finding that these persons had per-

sonal property out of which the taxes might have been made at the date when the taxes became delinquent. It is found that the plaintiff made no search for personal taxable property of such delinquent taxpayers prior to making sale of the real estate for their delinquent taxes, but he did examine the assessment roll, and did not at any time or at all seize or levy upon the personal property of the owner of such real estate to satisfy or pay the taxes mentioned in said certificates, or any of them. It was held in *Little* v. *Gibbs*, 8 Utah, 265, 30 Pac. 986, that a tax collector who had paid the taxes of a delinquent taxpayer had a right of action in his own name against the delinquent for the recovery of the taxes. In this case the tax collector has not paid the taxes. It may be conceded that he has failed to make a valid sale of the real estate to satisfy the amount demanded for the delinquent taxes. It would seem clear, under the provisions of our statute, that a lien for taxes still exists. The striking off of property at a tax sale to the county, or to the probate judge on behalf of the county, does not constitute the payment of the delinquent taxes at all. Section 2012 of the Compiled Laws of Utah, as amended (page 50, Sess. Laws 1890), provides that the taxes shall attach to and constitute a lien on the property assessed, if real estate, from the 31st day of August of each year, and, if personal property, from the day of the assessment. If the taxpayer is owner both of real estate and personal property, the tax on the personal property shall also be a lien on the real estate. In each and every case the lien shall be paramount to all other liens whatsoever, and it shall not be removed therefrom until the tax is paid, or until the title vests thereto, under a sale thereof, by virtue of proceedings to enforce payment of the tax.

It is evident that the taxes of these 65 delinquents have not been paid, and that they constitute a lien upon the

real estate of the delinquents for the entire amount of taxes due. The question is, in whose favor is this lien, under the facts found in this case? As already stated, this court has held in *Little* v. *Gibbs* that, if the collector paid the taxes himself, he may enforce the lien in his own right. He has not paid them. He has made a sale, voidable at the election of the delinquent taxpayer. Of course, the sale is valid if not objected to by the delinquent taxpayer. If he sees fit to ratify it, it is clear that he may do so; but, if he seeks to avoid it, does it not follow, by virtue of the statute just quoted, that the lien for taxes still exists against the property, and that that lien is in favor of the nominal purchaser at the tax sale, and may be enforced at any time? It is never barred by the statute of limitation, and is paramount to any other lien whatever against the property. We are of opinion that this is what the legislature intended by the section just quoted. Such being the case, the lien for these taxes is vested in the county, the nominal purchaser at the tax sale, and the collector is entitled to credit for the amount thereof. If the delinquent taxpayer never makes objection to the sale, the county obtains the title to the property sold, if the statute allows it to take a deed. It is sufficient for this case to say that the county will either obtain the property by the sale, or will obtain and has obtained a lien for the full amount of the tax due, both territorial, county, and school district, which is a paramount lien against the property of the delinquent taxpayers. Such being the case, it seems clear that the amount of these taxes should be credited to the plaintiff, in addition to the credits allowed him in the court below; the amount, as above stated, being $1,689.88. Under the findings of fact, we do not think that the plaintiff is entitled to costs for making these sales, or that the county has any valid lien upon the property for such costs; and therefore the

plaintiff is not entitled to credit for the amount claimed
for making these 65 sales, to wit, $444.25.

The next question is as to the fees for making out cer-
tificates of sale.    One of the defenses is that the certifi-
cates are more lengthy than is necessary, and that a cer-
tificate that contains two folios is sufficient, and that, by
reason of the length of the certificates, the charges there-
for are extortionate.    The statute fixing the fees of the
collector is found in the Session Laws of 1890 (page 50),
and is as follows, omitting the formal parts:    For each
certificate of sale, per folio, 25 cents; for publishing the
name and amount of tax due from each delinquent, $1; for
filing certificate of sale with the county recorder, 50 cents.
Section 2031 of the Compiled Laws of Utah provides:
"When real estate is sold for taxes, the collector shall
issue a certificate to the purchaser, reciting," etc.    "A
duplicate of such certificate shall be filed by the collector
in the office of the recorder of the county; provided, that
if at such sale no person bid and pay the collector the
amount of tax required to be paid as aforesaid on any
real estate, the collector shall make to the probate judge
and his successors in office, for and in behalf of such
county, a certificate similar to that given to other pur-
chasers, and such sale to the county shall have the same
effect as if made to an individual.    And the clerk of the
county court shall credit the collector with the amount of
the tax due thereon, and costs to date of sale."

There appears to be no controversy but that the collector
is entitled to 25 cents per folio for each certificate of sale.
The difficulty arises in the fact that in these 840 tax sales
made to the probate judge, which the court below found
to be valid, he also made out a duplicate certificate, and
filed the same in the office of the county recorder, and he
claims 25 cents per folio for each of these duplicates.
The court below declined to allow him anything for making

out the certificates of sale. We think, under the stipulation of facts, the court should have directed the clerk to credit him with the amount of fees due him for making out the certificates of sale, and that there was the same authority in the court to make this allowance that there was to allow him for the delinquent taxes, or for publishing the delinquent list, or for filing the certificates with the county recorder. If there was any necessity at all for the county court to pass upon the questions, we think it was waived by the stipulation of facts; but certainly there was the same necessity for the county court to ascertain the fact that the delinquent tax list had been published as there was for it to ascertain the amount due for each certificate. In other words, if there was anything for the county court to pass upon in relation to the plaintiff's claim, it would seem that it, of necessity, extended to his entire claim, and not to any particular part of it. And yet the court below did allow him about $8,000 of delinquent taxes, and the costs of publishing the delinquent list, $452.50, and the costs of filing 840 tax-sale certificates with the county recorder, at 50 cents each. We are of the opinion that, under the stipulation of facts in this case on which the case was submitted, it was the duty of the court to have ascertained the amount due the plaintiff, and to have directed the defendant to credit him with that amount. As we have said, in addition to the credits allowed him, he was entitled to a credit for the remainder of the unpaid taxes. It is found as a fact that the certificates of sale were each 12 folios in length. Under the statute, the fee for making these was $3 each. A lengthy discussion is had in the appellant's brief to show that the term "each certificate of sale" includes a duplicate certificate. We do not so understand the statute. It may well be doubted whether the statute just quoted requires any duplicate certificate of sale where the property is

knocked off to the probate judge for the want of a bidder. The reason for requiring it does not appear to us to exist, and the statute certainly, in terms, does not require it. But, without deciding the question whether it is required or not, we are of the opinion that the statute does not authorize any charge for making out these duplicate certificates, and that the charge is confined to one certificate for each sale, and that this is the only meaning that can be attached to the words "each certificate of sale," in the law fixing the fees of the collector. We think the plaintiff is entitled to 25 cents per folio for the certificate of each sale that he makes, and that he is not entitled to a like sum for a duplicate of such certificate.

This brings us to the remaining question, whether or not the certificates of sale are unnecessarily lengthy and the charges therefor extortionate. The form of certificate is set out in the record at length, and, while it is more lengthy than perhaps the writer of this opinion would use were he called upon to make a certificate of sale, yet it is clear that the form is not prescribed by statute; that it is left to the discretion of the collector to adopt such form as he may choose. In the absence of any showing (and there is none in this record) that the form was fraudulently gotten up for the purpose of creating illegal charges against the county, we cannot presume that the collector was actuated by bad faith in using it. We think the same presumption is to be indulged in favor of the plaintiff that is indulged in regard to other public officers, and that is that he has acted in good faith, and with an honest intention to execute the law. It was suggested in argument, and not disputed, that exactly the same form is in use throughout the territory, and has been for many years. Whether this is true or not we do not know, but it would seem from a careful examination of the matter that the proportion of words in the certificate which might be

eliminated without impairing its sense is not great. Different officers might use or compile different forms of certificates, but, as we have above stated, in the absence of any showing that the officer has acted in bad faith, we do not feel that it is our duty to impute to him bad motives in such a matter as this. It was within the power of the county court, perhaps, to have regulated largely the compensation of the plaintiff with reference to the fees that might be charged for making delinquent tax-sale certificates. It is to be presumed that they exercised their discretion, in view of all the facts before them, when they fixed the compensation of the plaintiff at $3,000, in addition to the fees which he might receive for tax sales made to the probate judge.

It results from this conclusion that the plaintiff is also entitled to credit for the sum of $2,520, being $3 each for 840 tax-sale certificates, in addition to the amount allowed him below. In concluding this opinion, we may say that we have entertained grave doubts as to whether this action and the kindred one of *Weber Co.* v. *Hamer*, 37 Pac. 749, are properly brought by proceedings in *mandamus*. We should have examined that question more at length were it not for the fact that the stipulation of facts indicates that it was the intention of the court below to fix the amount that the plaintiff was entitled to upon the showing made that the defendant should credit him with it, and upon appeal we are asked to do the same thing. We have done so without considering particularly the question of procedure. We are of opinion that, in addition to the $8,804.63, with which the court below directed that the plaintiff be credited, he should be credited with $1,689.88, additional delinquent taxes, and with $2,520, additional fees and costs; making a total credit of $13,014.51. It is therefore ordered that the judgment be reversed, and the cause remanded to the court below, with directions to

enter judgment in that court in accordance with this con-
clusion, and direct its mandate to the defendant Ledwidge,
commanding him to credit the plaintiff with the sum of
$13,014.51; and that the appellant recover the costs in this
court.

MERRITT, C. J., concurs.

BARTCH, J. *(dissenting)*:

I do not agree with my brethren in reversing this case.
It appears from the findings of fact, which were agreed
to by all the parties to the suit, that the plaintiff was the
tax collector, and, as such, on the 18th, 19th, and 20th
of December, 1893, offered for sale, at public auction,
certain separate parcels of real estate, for non-payment of
territorial, county, and school district taxes for the year
1893. That for 905 of these separate parcels of land there
were no bidders, and he thereupon made out certificates
of sale to the probate judge of said county, for and in
behalf of the county, and afterwards delivered the certifi-
cates to defendant Ledwidge, as clerk of the county court,
and demanded of said clerk credit for the taxes due and
costs to date of sale, amounting to $15,853.57; and the
clerk accepted the certificates, but refused to give the
credit demanded, the county also refusing to give the same.
That the costs of each sale were $7, as follows: "For
publishing the name and amount of taxes due from each
delinquent, together with a description of the property,
50 cents; for filing each certificate of sale with the county
recorder, 50 cents; 25 cents per folio for each certificate of
sale filed with the county recorder; and 25 cents per folio
for each certificate of sale deposited with the county clerk,"
—the one certificate being a duplicate of the other, and
each containing not less than 12 folios, exclusive of the
description of the real estate. That no claim for the

amount represented by these certificates, nor for costs, was ever presented to the county court for allowance. That the county court fixed his salary at $3,000 for the year 1893, with the mutual understanding that, in addition thereto, he should be entitled to all costs and fees allowed him by law, including those allowed him by law on tax sales and such certificates made to the probate judge. That, prior to the sale of the real estate for taxes, the collector examined the assessment roll, and found that the owners of but 65 out of the 905 parcels sold were also assessed with personal property, and that the collector made no search for personal taxable property of such delinquent taxpayers prior to the sale, nor did he ever seize or levy upon personal taxable property of the owners of the real estate described in the certificates.

Under this state of facts, the first question raised is whether the 65 tax sales, where the owners of the real estate sold had taxable personal property, are void. The court so held, and counsel for appellant insist that this was error. The statutory provision relating to this question, after providing for the publication of a list of delinquent taxes, reads as follows: "On the third Monday of December of each year, the collector shall expose for sale sufficient of such delinquent's real estate: *Provided,* that the personal taxable property of such delinquent has been first exhausted by a levy and sale, and for that purpose the tax on the real estate is made a lien on the personal property to pay the taxes and costs," etc. Sess. Laws 1892, p. 29. This is an amendment to section 11 of the act approved March 13, 1890, which is a new section, numbered 2030a, added to section 2030 of the Compiled Laws of Utah of 1888. All of these sections contain similar provisions regarding the application of the personal property to a delinquent's taxes and costs. From an ex-

2

amination of these several sections, it is evident the legislature intended that the personal taxable property of the delinquent should be exhausted before the collector had power to sell the real estate for the payment of his taxes. This is a condition precedent to the sale of the real estate, and the tax on the real estate is made a lien on the personal property for that express purpose. This provision of law is designed for the security of the taxpayer, and is therefore mandatory, and cannot be disregarded by the collector. A collector has but a naked power to sell land for taxes. It is not coupled with an interest. His authority is wholly statutory, and is derived from no rule of the common law. He is simply the agent of the law to sell; otherwise he has no authority, having no interest in the property. As such agent, he must strictly comply with the conditions imposed by law, or the sale will be void, for he is constituted such agent only by certain preliminary requirements, which must precede his action, and are the conditions upon which his authority to effect the sale is founded. If he fails to observe or comply with any one of these preliminary steps, such failure will be fatal to his action, for his power to sell is founded, not upon one, but upon all, of these requisites.

In the case at bar, the officer attempted to sell the 65 parcels of real estate without first exhausting the personal taxable property of the several owners. The exhausting of the personal property being a condition precedent, under our statute, to his power to sell the real estate, and he having failed to observe it, his power to sell never was created, and his action was without authority. Black, in his treatise on the Law of Tax Titles (section 255), states the law as follows: " Such a direction is mandatory, and its due observance is strictly a condition precedent to the authority to proceed further. It may therefore be stated

as a principle generally applicable to those states [referring to states having statutes similar to ours] that a title to real estate by virtue of a tax sale, when its owner had personal property subject to sale, within the jurisdiction, and of sufficient value to discharge the tax, but which was not sought out or demanded by the collecting officer, is invalid and worthless." See, also, Id. §§ 155, 198. Cooley, in his work on Taxation (page 470), says: "It is therefore accepted as an axiom, when tax sales are under consideration, that a fundamental condition to their validity is that there should have been a substantial compliance with the law in all the proceedings of which the sale was the culmination. This would be the general rule in all cases in which a man is to be divested of his freehold by adversary proceedings, but special reasons make it peculiarly applicable to the case of tax sales." See, also, Id. §§ 342, 472. It is quite clear that the sales under consideration cannot be upheld by authority. 2 Dill. Mun. Corp. § 820; 3 Washb. Real. Prop. p. 234, chap. 3, subd. 12; *French* v. *Edwards*, 13 Wall. 506; *Houghton Co.* v. *Auditor General*, 41 Mich. 28, 1 N. W. 890; *Scofield* v. *City of Lansing*, 17 Mich. 437; *O'Byrne* v. *City of Philadelphia*, 93 Pa. St. 225; *Seymour* v. *Peters*, 67 Mich. 415, 35 N. W. 62; *Wilhelm* v. *Russell*, 8 Neb. 120; *Wartensleben* v. *Haithcock* (Ala.), 1 South. 38. It is not necessary to determine in this case whether the county has a lien for the taxes on these parcels of land, thus attempted to be sold by the collector. It is evident, however, that the sales, being void, passed no lien to the county, and that, if the county has a lien, it has it by virtue of section 2012, Comp. Laws Utah 1888, as amended by the act approved March 13, 1890. Neither the certificates of sale nor any deeds which the county might eventually receive thereunder, could create for or pass to it any lien, because the sales were made without authority

of law, and therefore conferred no rights which the county
can enforce.

It is insisted that the right conferred by section 2030$a$,.
above quoted, is a personal right, and that only the tax-
payer can complain. If this be conceded, how can it avail
the appellant? The moment the county should attempt
to dispose of lands it had acquired through a void sale the
owner would assert his right. In that event the county
would stand on the same footing as an individual, and
with no better rights by virtue of the sale. Where a per-
son, at a void tax sale, purchases land, the payment of the
tax thereon is the same as a voluntary payment, made with-
out the request of the owner; and he has no lien for the
money so paid, unless given him by statute, for at com-
mon law the rule of *caveat emptor* applies. The county,
having acquired no lien or other rights by virtue of the
sales in question, is under no obligation to credit the col-
lector with the costs of void sales. Black, Tax Titles, §§
463, 464; Cooley, Tax'n, pp. 476, 509, 510; *Harper* v.
*Rowe*, 53 Cal. 233.

It is further contended by counsel for appellant that it
was lawful for him to charge 25 cents per folio for the
duplicate certificate of each of the remaining 840 tax sales,.
and that the court erred in holding such charge illegal.
It is the duty of the collector, when he sells real estate
for taxes to issue a certificate of sale to the purchaser, and
file a duplicate of such certificate in the office of the
county recorder. When there is no bidder at any sale who
will pay him the amount of the delinquent's tax, he is re-
quired to make such certificate to the probate judge, for
and in behalf of the county, and then such sale to the
county shall have the same effect as if made to an indi-
vidual. Comp. Laws Utah 1888, § 2031. For these
services the legislature has provided fees, as follows: ''For
each certificate of sale, per folio, twenty-five (25) cents.

For publishing the name and amount of taxes due from each delinquent, fifty (50) cents. For filing certificate for tax sale with the county recorder, fifty (50) cents." Sess. Laws 1892, p. 30, § 2030*a*.

It will be observed that there is no provision here for fees for the making of a duplicate certificate, except 50 cents for filing it with the recorder, and there is no implied obligation on the part of a county to make compensation to its officers. The right must be expressly conferred by law; and, when a statute creates a liability where none otherwise exists, it will be strictly construed, and the courts will not aid it in favor of the officer. Nor will they enlarge such liability, or extend it beyond the provisions as expressed in the statute. Nor is the statute under consideration at all ambiguous or uncertain in its provisions. It expressly provides a folio fee for "each certificate," and is silent as to the duplicate, except that it provides for filing it. It is clear that the legislature intended that the duty of making the duplicate certificate should be performed without additional compensation. The collector, having taken upon himself the discharge of the duties of his office, is presumed to have accepted it with a knowledge of the provisions of law relating to it. He therefore assumed the duty of making such duplicate certificate, knowing that there was no provision of law which would entitle him to the fees in question. The statute does not use the plural, but the singular, form of the word "certificate," and the folio fee allowed in each tax sale can apply to but one certificate. Suth. St. Const. § 371; Cooley, Tax'n, p. 266; *Rowe* v. *Kern Co.*, 72 Cal. 353; 14 Pac. 11; *Green* v. *Holway*, 101 Mass. 243; *City of Alton* v. *Aetna Ins. Co.*, 82 Ill. 45; *Boyd* v. *Hood*, 57 Pa. St. 98; *Wroughton* v. *Turtle*, 11 Mees. & W. 561. Counsel for appellant has cited the cases of *McKinstry* v. *U. S.*, 40 Fed. 813; and *Clough* v. *U. S.*, 47 Fed. 795, in

support of the proposition that a statute which fixes the compensation of officers should receive a liberal construction. These cases appear to support the proposition, but they have been overruled in *U. S.* v. *Clough,* 5 C. C. A. 140, 55 Fed. 373, and are therefore no longer authority on that point. This last case supports the rule of strict construction.

It is further contended that the court erred in deciding that each of the 840 certificates is longer than necessary, and that the costs charged in each case are one dollar in excess of what should have been charged. It appears from the agreed findings of fact that each certificate contains 12 folios of matter, exclusive of the description of the land. Section 2031, Comp. Laws Utah 1888, provides as follows: "When real estate is sold for taxes, the collector shall issue a certificate to the purchaser, reciting substantially the facts of the non-payment of the tax, levy upon, advertisement and sale of said real estate." It will be observed that there are but four facts which shall be substantially recited in the certificate,—the non-payment of tax, the levy, the advertisement, and the sale. The statute provides no form, and the collector is therefore entitled to exercise a reasonable discretion in creating and adopting such a form as will enable him to comply with the statute. This discretion, however, will not permit him to insert unnecessary words and sentences into the form, or to recite facts therein not required by the terms of the statute, and charge fees for the same. While the collector will not be held to the strictest rules of propriety in the use of language, yet unnecessary repetition should be avoided, and the form should be reasonably concise. In the case at bar, as appears from the record, the form contains 12 folios, and yet the statute requires the reciting of but four facts in the certificate. An examination of it shows it to be of unreasonable and unnecessary length,

and an infringement upon the rights of the taxpayer, who is to pay for the superfluous verbiage at the rate of 25 cents per folio. This is such an abuse of discretion as will authorize a court to interfere, as unwarranted under the law. Such a padding of the form, apparently for the purpose of increasing the number of folios, cannot be upheld upon any principle of justice to the taxpayer. Where the legislature leaves the manner of exercising a power to the discretion of an officer, it does not mean that he shall exercise such discretion arbitrarily to the injury of any subject. It is clear that, under the agreed statement of facts, the court properly reduced the number of folios to be allowed the collector in each case, and rightfully made a corresponding reduction in the amount claimed, and it seems equally clear that, in justice to the parties concerned, the amount thus allowed is still excessive. 5 Am. & Eng. Enc. Law, pp. 681, 682; *Van Duzee* v. *U. S.,* 59 Fed. 440; *Olsen* v. *Bagley* (decided at this term) 10 Utah, 492 (37 Pac. 739). The authorities cited by appellant on this point do not appear to be applicable to the case at bar, for here there is a clear abuse of discretion.

Counsel for appellant further contend that it was the duty of the county clerk to credit the collector with his costs on the assessment roll, without previous allowance by the county court. There are various statutory provisions respecting the duty of the clerk and county court. Section 187, p. 298, 1 Comp. Laws Utah 1888, provides: "The county courts in their respective counties have jurisdiction and power under such limitations and restrictions as are prescribed by law." And, under subdivision 12 of this section, such courts have power "to examine and audit, at least once a year, the accounts of all officers having the care, management, collection or disbursement of moneys belonging to the county or appropriated by law or otherwise for its use and benefit," and, under subdivision 13, "to examine, settle and

allow, all accounts legally chargeable against the county and order warrants to be drawn on the county treasurer therefor." Section 196 provides how claims must be itemized and verified before such court can allow them. Section 197 provides that "no account must be passed upon by the court unless made out as prescribed in the preceding section, and filed by the clerk." Section 208 reads: "Accounts for county charges of every description must be presented to the county court to be audited as prescribed in this act." Under these provisions of the law, it would seem that the county court has the exclusive power to pass upon all claims of every description, which may be chargeable against the county; but counsel for appellant insist that by a provision of section 2031, *supra*, the county clerk has the right, and that it is his duty, to credit the collector with his costs, and thus pass on his claim without authority from such court.

The provision referred to reads: "And the clerk of the county court shall credit the collector with the amount of the tax due thereon, and costs to date of sale." If the position of counsel be correct, then the collector's claim for costs will become an exception to any other claim against the county. An examination of the various provisions reveals no such intent on the part of the legislature; nor does it reveal any conflict between the several provisions of law. When these several provisions are read together, they mean simply that the county court shall audit and pass upon the claim of the tax collector for fees and costs, the same as any other claim; and then, when so audited and passed upon, the county clerk shall credit him with the amount allowed by the court. The clerk simply acts under the direction of the court. He cannot act in the capacity of clerk without acting under the orders of his superiors in any matter requiring judgment or discretion, judicial in its nature. There is no

statute authorizing the clerk to settle with the collector. Nor can the collector determine for himself, without the action of the court, what his fees and charges shall be, independent of a statute. Nor is it clear under the law, as contended by counsel for appellant, that the claims of the collector, arising because of the collection of delinquent taxes, were intended by the legislature to be a direct charge upon the county tax, to be credited to him the same as money, and the money, to the amount of the claim, to be withheld as part of his compensation. The cases which counsel cite to support this proposition do not appear to apply to the case at bar. Most of them are cases arising under statutes which provide that the collector may retain a certain per centum of the tax collected as a commission in lieu of other compensation. Those cases hold that he may retain his commission out of the tax. In this case, as shown by the agreed statement of facts, the collector was paid a stipulated salary by the county court, which was $3,000, for the year 1893, "with the mutual understanding" between him and the county court that he was entitled, in addition thereto, to certain costs and fees, including costs and fees for sales and certificates made to the probate judge. Under section 2021, Comp. Laws Utah 1888, the county court had the right to fix the collector's compensation. Whether this "mutual understanding" is binding on the county it is not necessary to determine; nor is it necessary to determine whether any of the charges made, pursuant to such "understanding," for the 840 certificates of sale issued to the probate judge constitute a valid claim, or what effect the illegal fees charged by the collector in each one of the 840 sales would have upon the rights of the county, should it at any time attempt to dispose of the real estate under the certificates of sale made to the probate judge, because both the

"mutual understanding" and the certificates are treated as binding and valid in the agreed findings of fact.

The question is, can the collector, receiving a fixed salary, withhold any money, which he receives in his official capacity, from the county treasurer, in payment of claims due him from the county? Section 2036, Comp. Laws Utah 1888, so far as material here, reads as follows: "The clerk of the county court in each county shall keep an account with the collector, debiting him with the amount of tax assessed and crediting him with the amounts paid; and the collector is hereby required to pay to the county treasurer, once a month, or oftener if required by the county court, all county funds collected by him, and shall take the treasurer's receipt therefor, specifying the amounts paid in kind." This is a clear statement of the duties of the collector, and leaves no room for doubt. Under its provisions, the collector must pay, not only a part, but "all, the funds collected" to the treasurer, once a month, or oftener if required by the court; and he has no right to any offset, not even though his claim or demand be for unpaid salary. Having collected the money, it is his duty to pay it over promptly, as provided by law; and he has no right to pause and question the right of the county to receive it before paying a demand due to himself. Nor has he a right to withhold any portion of it, as compensation in addition to his stipulated salary, in the absence of a statute expressly giving such right.

Cooley, in his work on taxation (page 704), thus states the law: "It has been seen that the law sometimes provides very summary proceedings for the enforcement of the duty to pay taxes, and that the legislative competency to do so has been very fully sustained. With much greater reason may the law provide summary remedies against those who, having accepted official positions under the revenue

laws, neglect or refuse to perform the duties which pertain to them, or endeavor to substitute a performance of their own for something of a different nature which the law has required. This is particularly true of tax collectors. They have only to collect money, and pay it over to the proper custodian; and it is seldom that a question arises which can justify departure from the strict terms of their authority, or neglect in the prompt payment of what comes to their hands." See, also, Id. pp. 705, 706. In *City of New Orleans* v. *Finnerty*, 21 Am. Rep. 569, the court said: "No officer of a government, state or municipal, is empowered to pay himself his salary, or plead in compensation a demand made against him for moneys collected by him in his official capacity, by an amount due him on account of his salary. His duty is to discharge the obligations of his office according to the terms of his acceptance thereof, and to get his pay as other officers get theirs. In other words, he cannot pay himself." Mechem, Pub. Off. § 873; Dill. Mun. Corp. § 230; *San Francisco* v. *Ford*, 52 Cal. 198; *Evans* v. *City of Trenton*, 24 N. J. Law, 764; *Hatch* v. *City of Cincinnati*, 17 Ohio St. 48; *People* v. *Supervisors of New York*, 1 Hill, 362; *Griffin* v. *Clay County*, 63 Iowa, 413, 19 N. W. 327; *Sikes* v. *Hatfield*, 13 Gray, 347; *White* v. *Levant*, 78 Me. 568, 7 Atl. 539; *Haswell* v. *Mayor, etc.*, 81 N. Y. 255. I am of the opinion that in the case at bar it was the duty of the appellant to pay over all the money which he collected, and then present his claims to the county court for allowance, the same as any other officer or claimant. Under the findings of fact, which were agreed to by all the parties to this action, I see no reason for disturbing the judgment of the trial court.