OGDEN CITY, A MUNICIPAL CORPORATION, RESPOND-
ENT, *v.* DANIEL HAMER, COLLECTOR OF WEBER
COUNTY, APPELLANT.[1]

1. TAX SALES.—CITY SCHOOL TAXES.—SALE OF SAME LAND TO
BOTH CITY AND COUNTY.—Session Laws 1892, p. 75, § 5, pro-
viding that the general tax of each city of the first and second
classes shall be collected by the county collector as territorial
and county taxes are collected, does not repeal an ordinance
of the city of Ogden (March 1880, § 17), relating to the collec-
tion of the city taxes and providing that if no person shall pay the
collector the amount of such city taxes on real estate, the col-
lector shall strike off the same to the city; and therefore, where
there is no purchaser at a sale for delinquent taxes on land, the
collector should make a certificate of the sale of such real
estate to the probate judge for and on behalf of the county, as
required by 1 Comp. Laws 1888, § 2031, for the amount of the
county, territorial, and territorial school taxes, and a certifi-
cate to the city of Ogden for the amount of city and city school
district taxes. Bartch, J., *dissenting.*

2. STATUTORY CONSTRUCTION.—REPEALS BY IMPLICATION NOT FAV-
ORED.—LOCAL OR SPECIAL LAWS NOT REPEALED BY GENERAL
LAWS WITHOUT CLEAR LEGISLATIVE INTENT.—Where a city
ordinance passed pursuant to its charter and an act of the
legislature relate to the same subject matter, the ordinance
is not repealed by the act unless the provisions of the former
are so repugnant to the latter that both cannot stand and be
given effect, since it requires the clearest intention on the part
of the legislature to repeal or alter existing laws, and more

---

[1] Both parties seem to have been dissatisfied with the decision
of the court. Hamer perfected an appeal to the Supreme Court
of the United States before Jan. 1, 1896. Petition for re-hearing
was granted on motion of Ogden City, Jan. 20, 1896. Upon re-
hearing, counsel for Hamer entered a special appearance, for the
purpose of objecting to the jurisdiction of the court. Pending.

22

particularly laws of special or local application are never to be deemed repealed by general legislation in the absence of clear legislative intent.

3. ASSESSMENT AND COLLECTION OF CITY TAXES.—COMPENSATION OF COLLECTOR.—APPARENT CONFLICT OF STATUTES.—Session Laws 1892, pp. 75-76, § 8, relating to the assessment and collection of taxes in cities, and providing that each city of the second class shall pay to the county one per cent. in full for the services of the county assessor in assessing, collecting and paying over the city taxes, is not in conflict with 1 Comp. Laws 1888, § 2030, as amended by Session Laws 1892, p. 30, § 2030a, providing that the collector shall receive the fees therein enumerated for certificates of sale, the publication of each delinquent, and for filing certificates, and the collector is entitled to compensation under each section, the city bearing its proportionate share under the latter section. Bartch, J., dissenting.

4. SALE OF LAND FOR DELINQUENT TAXES TO TWO GOVERNMENTAL CORPORATIONS.—LIENS OF EQUAL RANK.—SEMBLE.—Where a county collector sells land to the county for delinquent, territorial, territorial school and county taxes, and afterwards sells the same land to the city for delinquent city and city school taxes, both the county and city have perpetual liens on the land of equal rank. Semble, that the county might redeem from the city sale, but would take the land burdened with the city lien, unless it might be clearly shown that the land was not of sufficient value to satisfy both liens, then the sale first rightfully made, might divest the lien of the other governmental corporation.

5. SEMBLE.—TAX SALE.—WHEN VOID OR VOIDABLE PURCHASER ACQUIRES LIEN.—Semble, that if a tax sale be void or voidable the purchaser upon paying the taxes acquires a lien of the state, and though he may fail in an action of ejectment, yet he may bring an action to foreclose his lien and thereby recover from the owner the amount of the taxes paid with the interest and penalties provided by law.

6. TAX SALES.—SALE OF LAND TO CITY FOR DELINQUENT CITY SCHOOL TAXES.—Under Session Laws 1892, p. 131, § 129, relating to the collection of city school taxes, and providing that such taxes

shall be collected by the collector, as other city taxes are collected, the collector had authority to sell property for the delinquent school tax, and if no bids were gotten therefor, to strike it off for the city at the same time that properties were stricken off for delinquent city taxes.

(No. 628-9.  Decided Dec. 21, 1895.  42 P. R. 1113.)

APPEAL from the District Court of the Fourth Judicial District.  Hon. H. W. Smith, *Judge.*

Petition for *mandamus* by Ogden City against Daniel Hamer, Tax Collector of Weber County, to compel the payment of certain moneys alleged to have been collected as taxes of said city.  From the judgment entered, both parties appeal.  *Reversed.*

*Messrs. Richards & MacMillan* and *Messrs. Richards & Richards,* for appellant.

The charter of Ogden City conferred upon the city council the power to pass the ordinance for assessing and collecting city taxes.  § 701, 1 Comp. Laws of Utah 1888, p. 418; § 705–6, 1 Comp. Laws of Utah 1888, p. 419; sub. 3, § 1755, Comp. Laws of Utah 1888, p. 621.

"If lands are subject to taxation, they are subject to sale for taxes, the right to tax involving the power to enforce payment by sale of the lands."  Black on Tax Titles, 152.

"The power of the state to sell land for non-payment of taxes is, as we have seen, *antecedent to the statutes,* and rests in the necessity of the case.

"But that it is within the power of the government thus to provide a means for the secure and convenient collection of its revenue has never been questioned."  Black on Tax Titles, 182.

The ordinance having been authorized by statute had

the same force within the city in favor of the municipality and against persons bound thereby, as a law passed by the legislature of the state or territory. 1 Dillon on Mun. Corp. § 308 and note 1.

It had the effect of a special law of the legislature within the limits of the city, directing that the certificate should be made to the city instead of being made to the probate judge, as provided in the general law relating to territorial and county taxes. *Village of St. Johnbury* v. *Thompson* (Vt.), 9 Atl. 572; *In re Lawrence*, 69 Cal. 611.

"The ordinance of the city or the provisions of its charter would not be affected by a subsequent general law, unless they were obviously inconsistent." 1 Beach on Pub. Corp. § 81 and n, and § 520; 1 Dillon on Mun. Corp. 87 and n.

The general statute does not as a general rule repeal a local enactment by mere implication. *Evans* v. *Phillipi*, 2 Am. St. Rep. 655; *Ex parte Garza*, 19 Am. St. Rep. 845; *State* v. *Labatut*, 2 So. Rep. 550 (La.); *State* v. *Clark*, 54 Mo. 17.

"Rarely if ever does a case arise when it can be justly held that a general statute repeals a local statute by mere implication. *Malloy* v. *Commonwealth, ex. rel. Rainhard*, 115 Pa. St. 25; 7 Atl. 790.

"They (repeals by implication) are seldom admitted, except on the ground of repugnancy, and never, we think, when the former can stand together with the new act." *Ex parte Yerger*, 8 Wall. 85–105; *Robbins* v. *Rippey*, 12 N. E. 143.

"The courts require the clearest expression of the intention on the part of the legislature to repeal or alter existing laws. Where the two statutes can be so construed as to allow both to stand the courts will always adopt such construction." 1 Beach on Pub. Corp. § 94 and n. 2; *State* v. *Labatut*, 2 So. Rep. 551.

"This rule has peculiar force in the case of laws of

special and local application, which are never to be deemed repealed by general legislation except upon the most unequivocal manifestation of intent to that effect." 1 Beach on Pub Corp. § 95, n. 1.

"In adjusting the general provisions in a general act to the particular provisions of the special act, considerations of reason and justice and the universal analogy of such provisions in similar acts, are proper to be borne in mind, and ought to have much weight and force." Sutherland on Stat. Cons. 217 and n.

"*General words may be cut down when a certain application of them would antagonize the settled policy of the state.*" Sutherland on Stat Cons. § 218.

"Considerations of what is *convenient, just and reasonable,* when they can be invoked against the implication of the repeal, will be still more potent. The act being silent as to the repeal and affirmative, it will not be held to abrogate any prior law which can reasonably and justly operate without antagonism." Sutherland on Stat. Cons. § 152 and note 5.

"A repeal by implication never takes place unless the subsequent statute is so inconsistent with the former that the two cannot consistently stand together." *French* v. *Holt,* 57 Vt. 187.

"Repeals by implication are not favored in law, and are never allowed but in cases where inconsistency and repugnancy are plain and unavoidable; but if there are two statutes on the same subject which are repugnant, the latest operates as a repeal of the first *so far as the repugnancy extends, but no further.* The latest expression of the legislative will must prevail." *Hogaboon* v. *Highgate,* 55 Vt. 412; *State* v. *Palmer,* 3 So. 171; *Pa. Co. et al.* v. *Dunlap,* 13 N. E. 403; *Manker* v. *Faulhaber,* 6 S. W. 373; *People* v. *Chinie,* 70 Cal. 504.

Mr. Cooley, in his work on Taxation, at page 274, says:

"In construing statutes relating to taxes we ought, where the language will permit, so to construe them as to give effect to the obvious intention and meaning of the legislature, rather than to defeat that intention by a too strict adherence to the letter."

And in the decision of a recent case by the Supreme Court of the United States, it was said:

"Revenue statutes are to be regarded as penal, and therefore to be construed strictly. They are remedial in their character, and to be construed liberally to carry out the purposes of their enactment." *U. S.* v. *Hodson*, 10 Wallace, 395–406.

A statute is to be construed so as to carry out with reason and discretion the intent of the legislature though such construction may seem contrary to the letter of the statute. *U. S.* v. *Buchanan*, 9 Fed. 689; *Cliquot's Champagne*, 3 Wallace, 114, 115; Cooley on Taxation, page 270.

Mr. Blackwell, in his work on Tax Titles (vol. 1, page 431), says:

"We ought not to discard those aids which guide us in other cases, nor by an unreasonable and senseless nicety defeat a solemn act of the legislature."

To the same effect are the following cases: *Cornwall* v. *Todd*, 38 Conn. 443, 447; *Hubbard* v. *Brainard*, 35 Conn. 563, 568; *Rein* v. *Lane*, Law R., 2 Q. B. 144, 150.

And in *Lord Foley* v. *Commissioners of Revenue* (Law R., 3 Exch. 263, 268), Kelley, C. B., states that—

"It is better for the subjects and the state that the ordinary rules of construction should be applied."

And Prof. Parsons, in his treatise on Contracts (vol. 3, page 287), states the proper rule very clearly and concisely:

"It is a well settled principle that every charge upon

the subject must be imposed by clear and unambiguous words" * * * "but it is equally certain that no interpretation will be adopted which must defeat the purpose of the law, provided the language of the statute admit fairly and rationally of an interpretation which sustains that purpose."

"The act of making the levy of this tax is purely ministerial." *City of Coronado* v. *City of San Diego*, 97 Cal. 441; *State* v. *Byers*, 67 Mo. 710; *People* v. *Com'rs*, 19 Pac. 894; Cooley on Taxation, pp. 34, 69, 184; 1 Desty on Taxation, pp. 96–7.

And "the general assembly in accordance with the well settled canon of construction of legislative powers, may, therefore, act, in these respects, at its discretion and prescribe such mode for the formation of school districts, and designate such persons for the levying, collecting and having the custody of school taxes, as it alone shall consider most conducive to the public interests." *Speight et al.* v. *The People ex rel*, 87 Ill. 600.

"When two constructions may reasonably be adopted, one of which will render an act wholly nugatory, and the other will make it effectual the latter should be adopted." *Singer Mfg. Co.* v. *McCollock*, 24 Fed. 667; *Ter.* v. *Ashenfelter* (N. M.), 12 Pac. 894.

"In general it may safely be said, that where words in a statute are susceptible of two constructions, one of which will lead to an absurdity, the other not, the latter is to be adopted, though it be not the literal construction, but a liberal one." Endlich on Int. of Stat. § 264 and note; *Case of Chinese Laborers*, 13 Fed. 291; *Chinese Merchant*, 13 Fed. 605.

"We must adopt the sense of the words which harmonize best with the context and promote in the fullest manner the apparent policy and object of the Legislature." *The Lizzie Henderson*, 20 Fed. 529; *U. S.* v. *One Raft*, 13

Fed. 796; *U. S.* v. *Winn.,* 3 Sumn., 212; *The Enterprise,*
1 Paine, 33; *The Industry,* 1 Gall. 117.

It must be presumed that the legislature intended to
pass a valid law, and an admissible construction which
supports the law must be adopted. *State* v. *Haring,* 26
A. 915.

"In a matter so important as the maintenance of public
schools, the courts should incline to uphold, rather than
to defeat, the action of the officers charged with the exe-
cution of the law." *Law* v. *People,* 87 Ill. 403; *People*
v. *Com'rs,* 19 Pac. 894; Desty on Taxation, 468–9.

The sections of the two acts must first be read as sec-
tions of one act, and then the errors and mistakes must
be collected from the whole text and corrected.

"Where one word has been erroneously used for another
or a word omitted, and the context affords the means of
correction, the proper word will be deemed substituted or
supplied. This is but making the strict letter of the statute
yield to the obvious intent. Sutherland on Stat. Con.
§ 260 and note; *Bird* v. *Board of Commissioners* (Ky.), 24
S. W. Rep. 118; *Territory* v. *Clark* (Okl.), 35 Pac. 882.

These sales are not void. If the delinquent tax-payer
never makes objection to the regularity and validity of
the sale, the city obtains the title to the property sold,
and, in any event, the lien for the tax and costs is vested
in the city, which will either obtain the property by the
sale, or has obtained a lien for the full amount of the
tax and cost. It has been uniformly held by the courts
that a deed is only voidable and will not be set aside be-
cause there was taxable personal property which should
first have been exhausted, unless the owner of the land
repay the full amount paid by the purchaser and interest
thereon. *Thompson* v. *Johnson,* 75 Mich. 181; 42 N. W.
802; *State* v. *Casteel,* 110 Ind. 174; 11 N. E. 219; *St.
Clair* v. *McClure,* 12 N. E. 134; *Montgomery* v. *Trumbo*

(Ind.), 26 N. E. 54; *Crecelius* v. *Mann,* 84 Ind. 147; *Rose* v. *Newman* (Kan.), 27 Pac. 181.

"It is not an uncommon provision, that if no bidders offer to take the land and pay the tax, it shall be bid in for the state, or for the county and a purchase on such a bid would give the state or county the usual rights of a purchase." Cooley on Taxation, page 351.

In all cases in which the holder of a tax deed is defeated in an action by him to recover possession of the land the successful claimant shall be adjudged to pay the holder of the tax deed the amount of taxes he has paid with costs and interest. The tax deed holder has a lien for the same and this lien can be enforced. *Auld* v. *McAllister* (Kan.), 23 Pac. 165; *Cotes* v. *Rohrbeck* (Ill.), 28 N. E. 1110 and cases cited; *Anderson* v. *Williamson* (Ark.) 26 S. W. 818; *Gregg* v. *Jesberg et al.* (Mo.), 20 S. W. 652; *Gooch* v. *Benge* (Ky.), 14 S. W. 375; *Morrison* v. *Jacoby* (Ind.), 14 N. E. 546 and cases cited; *Farrington* v. *New England Irrigation Co.* (N. D.), 45 N. W. 191; *Bode* v. *New Eng. Irr. Co.* (N. D.), 45 N. W. 197; *Jackson* v. *Challis* 21 Pac. 87.

*Mr. R. H. Whipple,* City Attorney (*Messrs. Evans & Rogers,* of counsel), for respondent.

Ogden City claims that these certificates are absolutely void, and that neither it nor its auditor of public accounts can give the defendant, as collector, credit for any of the items included in such certificates. *First*—Because the collector was not and is not authorized to make two sales, one to the county and one to the city, for the same piece of land for the taxes of the same year. *Second*—Because each sale was and is made for a greater amount of money than is provided by law. *Third*—That the city of Ogden cannot purchase land at a delinquent tax sale, as

there is no law now in force in this territory authorizing such purchase. *Fourth*—Sess. Laws 1892, ch. 68, § 8, provides full compensation for the county assessor and collector for collecting and paying over the city tax to the city, and selling at a delinquent is a manner of collecting the tax, and the collector cannot recover extra compensation from the city for making these sales to the city. Even if the city purchase at the tax sales, there is no law providing for compensation of the collector for making certificates to the city. *Fifth*—That even if the city school tax is valid and legal and may be collected, the collector has no power to sell real estate, and, if he has power to sell, the same should not be charged in the sales to the city, and should not be included in the certificates, it being the duty of the collector to account directly to the board of education for all city school tax collected by him.

The certificates should have been made to the probate judge for the county. The county would then hold the city's interest in trust for the city. If redemption is made the county would receive the amount paid to redeem and from time to time distribute the same to the city and county in proportion to the interest of each. In the collection of the general city tax, the county acts as the agent of the city, and where the agent takes the property of the principal in his own name, he becomes the trustee for his principal by force of common law; thus the city is protected by the law and the city, when redemption is made, can compel the county to account. There is no statute by which the county would be required to pay the city its interest in the certificate before redemption. This plan works no hardship to either the county or the city. Indeed, this is the plan now in force in nearly all of the eastern states. In such states one sale is made and only one certificate given, which includes state, county, school,

independent school, insane, highway and all other taxes.
Duplicate certificates remain in the hands of the county
auditor.     Redemptions are made in the regular way, and
at the end of each month he distributes the amount re-
ceived from redemptions to the several funds, and at the
end of each quarter the treasurers of the several cities and
townships in the county draw their share of the funds so
distributed.    Indeed, this is the plan where land is sold
in this territory to private individuals at delinquent tax
sale, only one certificate is issued and that to the pur-
chaser.    That includes county, territorial, general city and
the school taxes, and the distribution is made at the time
of the sale when the purchaser takes his certificate.    Now
I ask, what is the difference in principle whether the dis-
tribution be made by the collector at the date of the sale
to a private individual or whether it be made by the
county treasurer at the time of redemption from a sale
made to the county?

This protects the city's interest and does not compel the
county to advance any money to the city.    The county is
not burdened with the unpaid taxes of the city.    This
carries out the evident intention of the legislature in
passing the law of 1892, abolishing the office of assessor
and collector in cities of the first and second class for the
purpose of reducing expenses of collecting general city taxes.

In case two certificates are issued, one to the county
and the other to the city, and both ripen into deeds,
which takes the title to the land, the county or the city?

A sale to the state makes a subsequent sale to the county
void. *Bradford* v. *Walker,* 5 S. W. R. (Ky.) 555.    All
the sales in controversy in this suit contain a charge in
excess of tax and legal costs, in this: Every sale for both
years contains a charge of $3 for duplicate certificate.
Fifty of the 1893 sales contain an excess charge of $6.75

as cost, personal property of owners not having been exhausted before the sale.

As to the first of these propositions the supreme court in *Hamer* v. *Weber County*, 37 Pac. 741, held that this charge for duplicate certificate is illegal and the collector cannot recover therefor.

We claim that this excess charge makes the sale absolutely void and not simply voidable at the election of the owner of the land.

"If a sale of land for a delinquent tax is made for a sum in excess of the tax and legal costs, the sale is void, unless the excess is less than the smallest fractional coin authorized by law." *Treadwell* v. *Patterson*, 51 Cal. 637; *Harper* v. *Rowe*, 53 Cal. 233, page of opinion, 236; *Axtel* v. *Gerlach* (Cal.), 8 Pac. Rep. 34; *People* v. *Hagadorn* (N. Y.) 10 N. E. Rep. 891, pages of opinion, 893–4.

"The statutory power is a power to sell for lawful taxes and lawful expenses, and if it is exceeded by including unlawful items of either class, the power is exceeded and its exercise is invalid *in toto*, from the manifest impossibility of saving the sale in part when the invalidity extends to the whole." Cooley on Taxation (2d ed.), page 497. Blackwell on Tax Titles (5th ed.), § 320.

"If a tax sale is void, the payment of the tax to the purchaser stands on the footing of a voluntary payment, not made at the request of the owner of the land, and which a court of equity will not require him to refund. It would be the voluntary payment of a stranger and would entitle him to no equity." Black on Tax Titles, 2d ed., §§ 463, 464; *Harper* v. *Rowe*, 53 Cal. 233; *McCormick* v. *Edwards*, 69 Tex. 106; (6 S. W. Rep. 32.)

"A tax sale for anything more than is lawfully chargeable, is a sale without jurisdiction, and therefore void." *Smith* v. *Ryan*, 88 Ky. 636; Am. & Eng. Enc. of Law,

vol. 25, pages 387 and 388, and cases cited; 1 Blackwell on Tax Title, §§ 521, 522; *Olsen* v. *Bagley,* 10 Utah, 492, 37 Pac. 739.

"It is a presumption of law that when the land has been sold for taxes, in part illegal, some portion of the land is taken to satisfy an illegal demand and would not have been sold at all if only what was lawful had been called for." 25 Am. & Eng. Enc. of Law, p 388; *Silsbee* v. *Stockle,* 44 Mich. 569.

"A tax is not a lien when sale is void." Cooley on Taxation, page 531.

A void sale creates no cloud upon the title, much less a lien.

### STATUTORY REMEDIES.

"The right to reimbursement by the purchaser who buys at a void tax sale is purely a statutory one, and the purchaser at the common law comes strictly within the rule of *caveat emptor,* and if his purchase proves void, he has no remedy whatever, because he is a stranger and has made a voluntary payment." Black on Tax Titles, §§ 463, 465, 467, 469.

"There is no such statutory provision for reimbursement to purchaser when sale is void *for any reason* in Utah territory, and there being none, the mere fact that the city purchased the land at the tax sale gives it no lien that can be enforced in equity or law for the reimbursement of the money paid." Black on Tax Titles, § 469; *Barber* v. *Evans,* 6 N. W. Rep. 445, page of opinion 446; *State* v. *Gasteel,* 11 N. E. Rep. (Ind.) 219.

The rule as laid down in *Little* v. *Gibbs,* 30 Pac. (Utah) page 988, applies, and he must pay over all the money "whether collected or not," says the opinion, and he cannot shield himself behind these void certificates and compel the city to accept of them in lieu of the legal duty

imposed by statute by which the city is entitled to. He must pay the full amount of taxes due unless he can show he has exhausted all the taxable property of the delinquent according to law.

"In the absence of express statutory authority, a city or other municipality cannot buy land at tax sale." *Campaign* v. *Harmon*, 98 Ill. 491; *Logansport* v. *Humphrey*, 84 Ind. 467; *Keller* v. *Wilson*, 14 S. W. (Ky.) 332.

"A subsequent statute revising the whole subject matter of the former one is a substitute for it, and repeals it." *Murdock Murphy*, 20 Wall. 590; Sutherland on Statutory Construction, § 154; *King* v. *Cornell*, 106 U. S. 395; *United States* v. *Tyren*, 11 Wall. (U. S.), 88, page of opinion, 92.

"A requirement by statute of demand or personal notification is imperative and distress without it would be illegal." Cooley on Taxation (2nd ed.), 441-2. 1 Blackwell on Tax Titles, §§ 335-6, 478. *Bowen* v. *Goodwin*, 75 N. Y. 414; *Thompson* v. *Gardner*, 2 Johns. 404.

"A personal demand must be made a reasonable time before a collector can collect the tax by distress—and all the means of collection prescribed in the act, *must have been tried and must have failed* before a sale can be made." *Parker* v. *Rule's Lessee*, 9 Cranch (U. S.), page 64, page of opinion 69; 1 Blackwell on Tax Titles (5th ed.), § 336; *Olsen* v. *Bagley*, 10 Utah, 492.

"The right to compensation depends upon the law conferring it, and not upon the contract, and when none is fixed by law the officer cannot recover even upon a *quantum meruit.*" Mechem on Public Officers, §§ 855, 856.

"A person who accepts an office to which no compensation is attached is presumed to undertake to serve gratuitously and he cannot recover anything upon the ground of an implied contract to pay what the service is worth,

and if no compensation is fixed by law, none can be recovered." Mechem on Public Officers, §§ 856, 862; *Howland* v. *Wright Co.*, 47 N. W. Rep. 1086.

The sale of property to make the tax is just as much a method of collection· and a part of it as is the receiving ·of money direct from the owner of the land by the collector. Black ·on Tax Titles, §§ 149, 150 (2nd ed.).

"A municipality takes no power by implication, unless absolutely necessary to carry into effect some power, expressly delegated to it and that *can be exercised* only for municipal purposes." Blackwell on Tax Titles, § 613.

That the city has no such power we call the court's attention to the following authorities upon the subject: Black on Tax Titles, §§ 152-3; Am. & Eng. Enc. of Law, vol. 25, page 368, and cases cited; *Merriam* v. *Moody*, 25 Ia. 163, pages of opinion 171-2-3; *Paine* v. *Spratley*, 5 Kans. 525; Cooley on Taxation, pages 470 and 497.

Section 7, p. 75, Laws 1892, reads: "It shall be the duty of the county collector to pay to the treasurer of each city of the first and second class in his county, on the first day of October in each year, and on the first day ·of each succeeding month until final settlement, all moneys in his hands collected for city taxes, and on or before the first day of March in each year, to make a final settlement with the city treasurer respecting the city taxes and pay over all moneys then due ·the city."

"*Mandamus* lies to all public officers to compel the performance of such official acts ˍas clearly pertain to their ·duty and are of absolute obligation." Merrill on Mandamus, §§ 21, 108.

"No officer of a government, state or municipal corporation, is empowered to pay himself or plead in compensation· a demand made against him for moneys collected by him in his official capacity, by an amount due him on account of fees or salary. His duty is to discharge the

obligations of his office according to law and the terms of his acceptance thereof and to get his pay as other officers get theirs. In other words he cannot pay himself." Merrill on Mandamus, § 873 (last part); *New Orleans* v. *Finnerty,* 21 Am. Rep. 569; Dillon's Mun. Cor. § 230 (4th ed.).

### SUPPLEMENTAL BRIEF FOR RESPONDENT.

The act of 1892 repeals the ordinance referred to and all other acts which were inconsistent or repugnant to it, and definitely fixes the only compensation which the city should pay for the services of the collector. *Lynch* v. *Butte County,* 36 Pac. Rep. 806; *Orange County* v. *Harris,* 32 Pac. Rep. 594; *City and County* v. *Bird,* 15 Cal. 295; *Town of Redwood* v. *Grimmenstein,* 68 Cal. 575; *Billings* v. *The Mayor, etc.,* 68 N. Y. 413; 1 Dillon on Municipal Corporations, 233–234.

It is an unquestioned principle of law that a public officer cannot receive compensation for services rendered, unless his right to do so is the creature of the statute. He is never permitted to receive compensation upon a contract made with the public, nor is he entitled to recover upon a *quantum meruit* for services rendered. If he has a right to recover compensation at all, it must be a creation of the law, and not because of services rendered, or of any contract made with the public or its agents. *Bartch* v. *Cutler,* 6 Utah, 409; *Howland* v. *Wright Co.,* 47 N. W. Rep. 1086; *Locke* v. *City,* 4 Colo. 65; *Bucknell* v. *County,* 30 Cal. 237; *Town* v. *Sharp,* 51 Ill. 71; *Talbot* v. *East Machias,* 76 Me. 416; *Barns* v. *Bakersfield,* 57 Vt. 375.

When a public officer claims a salary, fees or compensation for services rendered to the public, he must show an act of the legislature authorizing his demand. If he cannot show such act, he cannot recover compensation for

the services rendered. *Rothrock* v. *Easton School, etc.*, 133 Penn. St. 487. And when a statute allowing an officer's compensation admits of two interpretations, the words should be construed strictly in favor of the public and not literally in favor of the officer. *U. S.* v. *Clough*, 55 Fed. Rep. 373.

KING, J.:

This action was brought by plaintiff, Ogden city, against defendant, to obtain a peremptory writ of mandate commanding him to pay to plaintiff $18,786.57, alleged to have been collected as taxes of Ogden city for the years 1893 and 1894, and wrongfully withheld by defendant, together with interest thereon. Defendant answered, denying that he wrongfully withheld said sum, or any sum whatever. He also filed a cross complaint, making Willis T. Beardsley, auditor of public accounts for plaintiff, a party to the action, and codefendant with Ogden city. The pleadings and agreed statement of facts presented to the lower court show: That defendant was tax collector for Ogden city for the years 1893 and 1894, and as such gave a bond in the sum of $60,000, approved by the city council of said city. That in March, 1880, an ordinance providing for assessing and collecting city taxes was passed by plaintiff (and never was amended or repealed by plaintiff until after the questions herein presented had arisen), section 17 of which is as follows: "When real estate is sold for taxes, the collector shall issue a certificate to the purchaser reciting substantially the facts of the nonpayment of the tax, levy upon, advertisement and sale of said real estate, which certificate shall be *prima facie* evidence of the facts therein recited; a duplicate of such certificate shall be filed by the collector in the office of the recorder of the county; provided that if at such sale no person

shall bid and pay the collector the amount of tax and costs to be paid as aforesaid on any real estate, the collector shall strike off the same to the city, and shall make to Ogden city corporation, a certificate similar to that given to other purchasers, and such sale to the city shall have the same effect as if made to an individual; and the auditor shall credit the collector with the amount of tax due thereon and costs to date of sale." That the general city taxes for the year 1893 and 1894 amounted to $194,-128.72, and of said amount the tax collector has paid to plaintiff $175,342.15, leaving a difference of $18,786.57. That the defendant, Hamer, as tax collector, made 1,177 sales of real estate for delinquent taxes for which there were no bidders, and said estate was struck off to Ogden city. That the amount of taxes and costs represented by such sales are as follows:

| | |
|---|---:|
| Ogden city taxes | $12,304 79 |
| Ogden city school-district taxes | 3,733 99 |
| One-half of cost for publishing names and properties | 294 25 |
| Paid for filing 1,177 certificates with the county recorder | 588 50 |
| Fees for issuing 1,177 certificates of sale in duplicates; 2,354 certificates at $3 | 7,062 00 |
| | $23,983 53 |

—That 50 out of the 1,177 tax sales which were made to the city were sales of property belonging to persons who had personal property assessed to them, but it is not shown whether any of them owned any personal property at the time the taxes became delinquent or the sales were made. The amount of costs included in these 50 certificates is $337.50. The amount of taxes represented by them is: Ogden city taxes, $1,108.23, and Ogden city school-district taxes, $342.83. The statement of facts fur-

ther shows: That in the other 1,127 sales the owners had no personal property. That, on the same days that the collector offered these properties for sale for the delinquent taxes for Ogden City and the Ogden city school district, he offered them for sale for the delinquent territorial, territorial school, and county taxes of Weber county for the same years, and that no persons bid for or purchased the same, and thereupon certificates in duplicate were issued for each of such properties to the probate judge of Weber county, for and in behalf of the county, and one certificate for each of such tracts was filed with the county recorder of Weber county and credit demanded therefor for such territorial, territorial school, and county taxes, and costs incurred therein; the costs being: For one-half of the cost of publishing the names and amount of taxes due from each delinquent, 25 cents; for filing each certificate with the county recorder, 50 cents; and 25 cents per folio for each of such certificates of sale. And that Weber county has paid the defendant tax collector herein all his costs and fees for such services, and fully settled with him therefor.

The decree of the lower court ordered the plaintiff city to credit defendant tax collector with $16,531.04, and further ordered that the defendant pay to the treasurer of said city, the sum of $7,452.49, and interest amounting to $97.90, and that each party pay one-half of the costs, and that writs of mandate issue against each of the parties requiring the performance of the judgment of the court. The credit ordered to be made to the defendant is the aggregate amount of the city taxes represented in the 1,177 certificates of sale made to the city, the cost of publishing the names and descriptions of property of the 1,127 delinquent taxpayers who were not assessed as owning any personal property, 50 cents each for filing such 1,127 certificates with the county recorder, and $3 for issuing each of

said 1,127 certificates. The court refused to allow the claim for credit for the Ogden city school-district taxes included in the certificates, and for the costs connected with the 50 certificates of sale of property belonging to persons who were assessed as owning personal property, and also refused to allow any costs or fees for making out the duplicate certificates of sale. From this judgment both parties appealed to this court, and both appeals were set down and heard together, and are decided by this opinion. Without expressing an opinion as to the rightfulness of the form of action, and the power of the court to pass upon the. questions presented by these appeals in this form of action, we will consider them upon the agreed statement of facts, as both parties earnestly desire their consideration by the court.

The city claims that the certificates in controversy are void, and that neither it or its auditor of public accounts can give defendant tax collector credit for any of the items included in the certificates, because it claims the collector was not authorized by law, in cases where property was offered for sale for delinquent taxes, and no bidders were secured, to issue certificates in duplicate to the probate judge of Weber county, for. and in behalf of the county, for such properties, for the delinquent territorial school and county taxes, and also to issue certificates for the same properties to Ogden city for the delinquent general city taxes and the taxes of the Ogden city school district, and that certificates in duplicate for such properties should be issued to the probate- judge only, and include all of the delinquent territorial, territorial school, county, city, and city school-district taxes, and that the city has not the legal authority to receive and hold tax-sale certificates. The city also contends that, as 50 of the sales made to the city for the year 1893 were made without first exhausting the personal property of the owners

of the real estate, they were void, and that, for the years 1893 and 1894, certificates for each sale contain a charge of $3 for the issuing of the duplicate certificates, and that, therefore, all of the sales were void; also, that the statute provides that each city of the second class (Ogden being a city of that class) shall pay to the county 1 per cent., and such payment shall be in full for the services and compensation of the county assessor and collector in assessing, collecting, and paying over the city tax, and that selling at delinquent tax sales is a manner of collecting taxes, and that the collector cannot recover fees or costs from the city for making sales to the city, even if the certificates were otherwise valid; and further that, if the city had authority to purchase at tax sales, neither the laws of the territory nor of the city provided for compensation of the collector for making certificates to the city, and that for that reason he is not entitled to recover from the city therefor; further, that, even if the city school tax is valid and may be collected, the collector has no power to sell real estate for such delinquent taxes, and, if he had such power to sell, the property sold should not be included in the certificate to the city, it being the duty of the collector to account directly to the board of education of the school district for all such school taxes collected by him. The defendant contends that the court below erred in refusing to order him credited with the Ogden city school-district taxes included in all of such certificates of sale, with $3 costs or fees for the issuance of each of the duplicate certificates of sale, and for his costs included in the 50 certificates of sale where the owners owned personal property.

The statute relating to the sale of property for delinquent territorial, territorial school, and county taxes was enacted in 1878, and is as follows:

" Sec. 2031. When real estate is sold for taxes, the collector shall issue a certificate to the purchaser reciting substantially the facts of the non-payment of the tax, levy upon, advertisement and sale of said real estate, which certificate shall be *prima facie* evidence of the facts therein recited; a duplicate of such certificate shall be filed by the collector in the office of the recorder of the county; provided, that if at such sale no person bid and pay the collector the amount of tax required to be paid as aforesaid on any real estate, the collector shall make to the probate judge and his successors in office, for and in behalf of such county, a certificate similar to that given to other purchasers, and such sale to the county shall have the same effect as if made to an individual. And the clerk of the county court shall credit the collector with the amount of tax due thereon, and costs to date of sale." 1 Comp. Laws, p. 728.

Two years later, on March 16, 1880, in pursuance of the powers conferred in its charter, the city council of Ogden city passed the ordinance providing for the assessing and collecting of city taxes,—section 17 of which has been quoted,—and provided for the sale by the assessor and collector for the city of properties for delinquent city taxes in identically the same manner as that provided by the legislature for the sale of properties for delinquent territorial, territorial school, and county taxes, except the ordinance directed that, in cases where there were no bidders for the property, certificates should be issued to Ogden city corporation, and that the city auditor should credit the collector with the amount of taxes included therein, and costs to date of sale. It is conceded that these sections of the statute and ordinance were both in full force and effect at the time all these certificates were issued, unless, by legislative enactment entitled "An act provid-

ing for the assessment and collection of taxes in incorporated cities, town and villages," approved March 10, 1892, the ordinance was repealed by the following sections:

"Sec. 5. The general city tax of each city of the first or second class shall be extended on the general roll by the county clerk in a separate column, at the rate certified by the city council, at the same time the territorial and county taxes are extended, and the whole taxes shall be carried into a column of aggregates, and the whole taxes including the general tax of cities of the first or second class shall be collected by the county collector at the times and in the manner provided by law for collecting territorial and county taxes, and the warrant to the county collector shall include such city taxes, and confer on him the same powers respecting the collection of taxes and sale of delinquent property as are conferred respecting the collection of territorial and county taxes."

"Sec. 8. Each city of the first class shall pay to the county in which it is situated one-half of one per cent., and each city of the second class shall pay to the county one per cent., and such payments shall be in full for the service and compensation of the county assessor and collector in assessing, collecting and paying over the city tax.   *   *   *

"Sec. 9. The office of assessor for each incorporated town, city and village, and the office of collector in each city of the first or second class, is hereby abolished." Sess. Laws 1892, pp. 75, 76.

The section of law under which school taxes for cities of the first and second classes were authorized to be collected reads as follows:

"Sec. 129. The board of education shall, on or before the first day of March of each year, prepare a statement and estimate of the amount necessary for the support and maintenance of the school under its charge for the school

year commencing on the first day of July next thereafter, also the amount necessary to pay the interest accruing during such year on bonds issued by said board, and the amount of the sinking fund necessary to be collected during such year for the payment and redemption of such bonds; and shall forthwith cause to be certified by the president and clerk of said board, to the assessor and collector for said city, the amount required for school purposes for the coming year, and the assessor and collector for the city, after having extended the valuation of property on the assessment rolls, shall levy such per cent. as shall as near as may be, raise the amount required by the board; which levy shall be uniform on all property within the said city as returned on the assessment roll thereof, and the said assessor and collector is hereby authorized and required to place the same on the tax roll of the city, and said tax shall be collected by the collector as other city taxes are collected, but without additional compensation for assessing and collecting, and pay to the treasurer of said board, promptly as collected and held by him subject to the order of the board of education; provided, that the tax for the support and maintenance of such schools shall not exceed in any one year two mills on the dollar upon all taxable property of said city." Sess. Laws 1892, p. 131.

The city contends that said section 5 repeals section 17 of the ordinance, and requires the county tax collector to issue but one certificate, in duplicate, for each of these properties, to the probate judge of Weber county, and to include in such certificate all of the territorial, territorial school, county, city and city general district taxes, and that, even if the certificates are made to the city, they ought not to include the taxes of the Ogden city school district, as the city is not in any manner interested therein. The collector insists that the statute of 1892 is not as far-reach-

ing in its effects, but requires him to perform, under the ordinance, all the duties formerly performed by the city collector, and that when he offered the several properties for sale, and no bids were made for them, it became his duty to issue certificates to the probate judge for all territorial, territorial school, and county taxes, and to Ogden city corporation for the general city taxes and the taxes of the Ogden city school district. In other words, he acted as county collector, so far as the collection of the territorial and county taxes were concerned, and as city collector so far as the collection of the city and city school-district taxes were concerned. The difficulties of this case seem to have arisen through the failure of the legislature to make as explicit as it might have done the different provisions of the statutes; but, taken as a whole, we see no difficulty in discovering the evident intent of the legislature, and when that is done it is our duty to give it full force and effect. It is well known that prior to the legislation of March 10, 1892, the law provided that there should be an assessor and collector for each city, whose duty it was to assess and collect the taxes for the city under and in pursuance of ordinances enacted by the municipality, and that by act of the legislature approved March 13, 1890 (Sess. Laws 1890, pp. 128–135), providing for "a uniform system of free schools throughout Utah territory," a separate school system was provided for all cities of the first and second classes in the territory, and the boundaries of these city school districts were declared to be identical with the corporate limits of the cities within which they were situated. It was also provided that the schools of these cities were not to be under the supervision of the county superintendent of schools, but were to be under the control of boards of education to be selected annually by the qualified voters of the municipalities.

Section 121 of that act, so far as the points involved in this case are concerned, was identical with section 129 of

the school law of 1892, *supra*. Under that law the
assessor and collector for the city assessed and collected
these school taxes, and struck off the property of delin-
quent taxpayers, when no bids were made, to the city,
for the city and city school district school taxes delin-
quent, under the provisions of the ordinance cited; and,
as we are informed, without any confusion or questions
ever arising as to the execution of that law. With that
condition existing, and for the purpose of simplifying the
execution of the tax laws, as well as for the convenience
of the taxpayers, the legislature abolished the office of
assessor and collector in all cities of the first and second
classes, and conferred upon the county collectors of the
several counties the power to collect the general city taxes,
and the taxes of the school districts situated within such
municipalities, in exactly the same manner that they were
collected by the city assessors and collectors, whose offices
were then abolished. Nowhere in the act or acts, taken
together,—for it is incumbent upon us to consider the
provisions of these several acts in *pari materia*,—do we find
any intention on the part of the legislature to in any way
change the rights, obligations, or liabilities of either the
counties, cities, or school districts in regard to this mat-
ter. The only apparent object on the part of the legis-
lature was to keep the tax records at one office, and to
have the duties performed by the one officer. The city
ordinance directing that these certificates should be issued
to the city, having been authorized by the city charter,
had the same force and effect within the city as a special
law passed by the territorial legislature. 1 Dill. Mun.
Corp. § 308; *Village of St. Johnsbury* v. *Thompson* (Vt.),
9 Atl. 572; *In re Lawrence*, 69 Cal. 611, 11 Pac. 217.
And the ordinance was not repealed, unless the provisions
of section 5 of the act of 1892, *supra*, are so repugnant
to its provisions that both cannot stand and be given

effect. *French* v. *Holt*, 57 Vt. 187; 1 Beach, Pub. Corp. §§ 81, 520; 1 Dill. Mun. Corp. § 87. The courts require the clearest expression of the intention on the part of the legislature to repeal or alter existing laws, and, where the two statutes can be so construed as to allow both to stand, the courts will always adopt such construction. This rule has peculiar force in the case of laws of special and local application, which are never to be deemed repealed by general legislation, except upon the most unequivocal manifestation of intent to that effect. 1 Beach, Pub. Corp. §§ 94, 95; *State* v. *Labatut* (La.), 2 South. 551.

Guided by these well-recognized rules, we see no reason why the ordinance and the statute cannot both stand. The charter creating the municipality conferred the taxing power upon it, and authorized it to provide by ordinance for the assessing and collecting of taxes. This the city did. Then the act of the legislature abolished the office of city assessor and collector, and conferred the powers of that office upon the county collector; but nowhere in the act do we discover any intention on the part of the legislature to relieve the city from the burdens of carrying the real estate upon which the city taxes become delinquent, or to declare that, when offered for sale, it cannot be sold to a purchaser. Nor do we find any intention to have the county carry this burden for the city, nor for the probate judge to act as trustee for the city. It seems to us that the language of our brother (Justice Smith, since deceased) who tried the case in the lower court so fully covers the points that we quote approvingly from his opinion, wherein he says:

"The system appears to be, so far as the city taxes are now concerned, that the property is assessed by the county assessor, the roll is returned to the county court, a member of the city council or mayor sits with the county court as a board of equalization, and after it is equalized

the rate of county and city taxation is extended upon the county roll, and the roll is then certified by the clerk to the collector, with a warrant for its collection; and there the matter stops, so far as the city taxes are concerned. There is no provision to be found in the statutes, anywhere, to enforce the collection of delinquent taxes. The counsel for the city claims that the section governing the collection of county and territorial taxes is to be so construed that it will include the collection of city taxes, and that that is the only law there is in force upon the subject. Now, to give that statute any such effect is for the court to do exactly what counsel upon both sides repeatedly urged it not to do; that is, to legislate. That statute does not authorize any such thing, and in fact, in my view, it negatives any such proposition. The statute for collecting county and territorial school revenues is section 2031—that is, where they are delinquent—of the Compiled Laws. Now, counsel for the city says that that ought to be read, ' for and in behalf of the county and cities situate within the county,'—in other words, that the probate judge is to hold in trust for the county and for the cities,—and during the argument, seemed to have the impression that the probate judge held in trust for the territory, which is not correct. The county is compelled to pay the territorial taxes in full, and to carry the delinquent list entire, both for the county and territorial delinquent taxes; and therefore it is proper that the probate judge should hold in behalf of the county, because there is no one else interested at all in the property that is sold for county, territorial, and territorial school taxes, and, if that is made to include city taxes, then one of two things must follow: Either the probate judge must hold in behalf of the county and the municipalities within the county, as trustee,—which is the claim made by the city attorney,—or the county must go to work and pay to the cities all of the delin-

quent city taxes, which is a proposition so preposterous that I do not believe the legislature ever contemplated it at all. It would result in absolutely exhausting the county. Their rate is limited to three mills a year, but if they would have sufficient money collected of their available general revenue to pay all of these delinquencies, both territorial, county, school, school-district, and city taxes, within their respective counties, where there is any considerable delinquent list— I say such a proposition is so absurd that I cannot conceive that the legislature ever intended it; and to hold that the probate judge has to hold in trust for the cities is simply to have the court add to the legislation that has been enacted absolutely. There is not any provision of law, whatever, that authorizes any such conclusion, unless the court creates it, and that I do not intend to do. It results, then, that one of two propositions is correct: Either the delinquent taxes of the city—that is, the property that is delinquent for city taxes—must be sold to the city, where there is no other purchaser, or else it cannot be sold at all, and there is no authority of law for collecting such delinquent taxes.

"Now, the last proposition is so unfair and so unreasonable that I cannot believe that the court has to follow that. If it were the accepted doctrine that the property of taxpayers cannot be sold for delinquent taxes, there would be very little city taxes paid in Ogden, I undertake to say, at present. If it is a mere voluntary contribution to support the city government, that is what it would amount to. If you cannot sell the property, the payment of taxes is purely voluntary. So that it reduces itself to one proposition, and that is that the levy of city taxes must be enforced by a sale to the city, in default of other purchasers. The property can be sold, and the city must be the purchaser. Nor do I think that there is any conflict in this view with the statute law upon the subject.

Section 22 of the original charter expressly empowered the council to pass an ordinance providing for just that thing (that is, for the enforcement of delinquent taxes by sale or by suit; they have the election); and by section 17 of the ordinance they did proceed to provide for the enforcement of it by sale, almost in the exact language of section 2031 of the statute in regard to sale for delinquent county and territorial taxes. The only difference, practically, is in that ordinance and section 2031 is that in one case it is provided the sale shall be to the city, and in the other to the probate judge, on behalf of the county, and in one it is provided that the auditor shall credit the collector with the amount of taxes and costs of sale, and in the other that the county clerk shall do that. I say this ordinance was fully authorized by the charter, and was in effect when the law passed making the county collector the collector of city taxes, and that law failed absolutely to provide any method for enforcing delinquent city taxes. It seems to me that this law is still in force, this ordinance is still in force, and that the proper practice is the one resorted to by the collector in this case,—to sell for delinquent taxes, and to sell to the city where there is a default of purchaser, and to take credit for the amount of the costs and for the taxes that are delinquent, upon the property sold, and that it is the duty of the auditor to credit him with that. Now, so much for the city taxes.

"The other claims which are brought in here are very much more involved. I may say, in passing, that in my judgment the collector is entitled—if it is the only statute upon the subject, and no other was called to my attention—the collector is entitled to the fees for making these certificates that were allowed in the supreme court in the case of *Hamer* v. *Weber Co.* (Utah), 37 Pac. 741; that is, $3 for each certificate, instead of the amount claimed here. I think that matter is settled by the decision in

the supreme court case. I cannot see that there can be any additional fees, and I do not see that there should be any less. In fact, this certificate set out in the stipulation of facts appears to be of the same length as the one in the county case. The decision of that case, I think, determines the question upon the persons who had personal property that was not exhausted, and, of course, the collector was not entitled to fees at all for making these sales; they simply passed the tax lien. Now, the city attorney objects to this conclusion, for the reason that he says these proceedings are absolutely void; that the city gets nothing, and is not concerned in it. That question is passed upon by the decision in the case of *Hamer* v. *Weber Co.*, by the supreme court, and there is no conflict between that case and the other authorities upon the question of tax sales. Most of the tax-sale cases that have come into the courts—in fact, I may say almost every one of them—have been controversies between purchasers at tax sales and the owners of the property, and in almost every case it has been held that the tax sales failed to pass the title. There are so few cases in which that has not been held that it is almost impossible to find one. The question is one where the courts always inclined to look for the slightest flaw in the proceedings in the collecting officer, for the purpose of avoiding the sale; that is, to avoid passing the title. Now, it would readily occur to every lawyer that these actions are almost invariably actions at law, where one person relies upon the tax title, and the other relies upon a title deraigned from the government, down to the tax sale. Therefore the equities are never involved. The case of *Hamer* v. *Weber Co.* presented the case in a different aspect, not entirely new, because there are authorities to be found—a number of them—that are in line with that decision; and I may say that none like it are to be found in conflict with it,

so far as I know; that is, where the question there involved was presented. In equity the purchaser at a tax sale is always held to hold the tax lien, unless the statute absolutely ends it within a certain time, which it does in some states, but our statute continues it forever, and makes it paramount to all other liens, so that there is no such thing as removing it without payment; and therefore any equity which may be enforced as a lien by the purchaser, whether real or nominal, at any passing title, is not good, and he has a right to waive his title and insist upon his lien, and the sale would be valid, if the owner see fit to confirm it, just as any other illegal sale would be valid. If I go and sell my neighbor's property, and make a deed for it, and receive the money for it, my neighbor may not be a party to that transaction at all, but utterly ignorant; yet he has a right to confirm it and sue me for the money as his trustee, and it makes a good conveyance when he does so. Just so with a tax title. The vendor cannot sue for his money, because he owes it to the state, and the state gets it, if it is paid by some purchaser; and, if it has never been paid,—as it never is where there is a nominal purchaser, the county or city,— then he must pay it, in order to relieve himself of the lien. This was the conclusion of the supreme court, and I have no doubt of its correctness, nor have I any doubt about it being bound by it."

In the argument of the case, counsel for the city strongly urged upon the court that the certificates of sale to the city were void, because like certificates had been issued to Weber county for the same properties for the delinquent territorial, territorial school, and county taxes for the same years. In this, counsel is mistaken. The The statute creates a perpetual lien for each of these taxes, and they are of equal rank. In the case of *Justice* v. *City of Logansport,* 101 Ind. 326, it was held, substan-

tially, that taxes levied by incorporated cities for municipal purposes are, in effect, levied by the state, and are not inferior in rank, dignity, or priority to taxes levied for state or county purposes. And for these reasons it was also held that a sale of land for state and county taxes would not divest the lien thereon of city taxes. A perpetual lien cannot be destroyed by a sale on another lien of equal rank. The purchaser has probably a right to redeem from the city sale, but he does not take a title free from the city lien, except, perhaps, when it is clearly shown that the land is not of sufficient value to satisfy both city and county liens, and then the sale first rightfully made may divest the lien of the other governmental corporation. 2 Blackw. Tax Titles, §§ 990, 991. And if, for any reason, the tax sales are absolutely void, or even voidable, whether because there are excessive items of costs, or taxes included in the tax certificates or otherwise, the purchaser need not wait to bring ejectment and fail, in order to seek reimbursement. He may allege that his title is invalid, and petition to foreclose his lien. *McClure* v. *Warner,* 16 Neb. 447, 20 N. W. 387; 2 Blackw. Tax Titles, §§ 995–998. The purchaser may recover the taxes paid him, with interest, and the penalties provided by law, from the owner. He acquires the lien of the state, as a general rule, even though his title to the land is worthless; and he is entitled to reimbursement, as a condition of the legal recognition of the owner's right. Id. § 995; *Long* v. *Smith* (1885), 67 Iowa, 26, 24 N. W. 574; *Coonradt* v. *Myers* (1883), 31 Kan. 30, 2 Pac. 858; *Coats* v. *Hill* (1883), 41 Ark. 149; *Culbertson* v. *Munson,* (1886), 104 Ind. 451, 4 N. E. 57; *White* v. *Shell,* 84 Mo. 569; *Hoffman* v. *Groll,* 35 Kan. 652, 12 Pac. 34; *Scott* v. *Millikan,* 104 Ind. 75, 3 N. E. 647; *Millikan* v. *Ham,* 104 Ind. 498, 4 N. E. 60; *Bradley* v. *Cole,* 67 Iowa, 650, 25 N. W. 849. When, through defects in the

24

deed, the holder fails to establish his title to the land, he is entitled to a decree against the realty for the amount due him. 2 Blackw. Tax Titles, § 995; *Ward* v. *Montgomery*, 57 Ind. 277. The books are full of cases establishing the doctrine here laid down,— that, while at common law a sale might be absolutely worthless, still the lien remains on the land, without ever being barred, until the delinquent taxes are paid, or until a title passes by a tax sale, and at any time the holder of the tax lien (the purchaser) can proceed to a court of equity to enforce the lien and recover the moneys he has expended.

The next question for our consideration is whether the provisions of section 8 of the act of March 10, 1892, *supra*, are intended to include the costs, fees, or compensation to the collector for making these delinquent tax sales to the city, and for advertising the names and properties of the delinquent tax-payers, and for filing the duplicate tax-sale certificates with the county recorder, and, if not, whether there is any authority of law for the collector to charge and recover costs, fees, or compensation for these services and expenditures. Section 2021 of the territorial statutes provides that "the compensation to be received by assessors and collectors shall be as determined by the county courts of their respective counties" (1 Comp. Laws, p. 723), while section 2030*a* of the same act, as amended March 10, 1892 (Sess. Laws 1892, p. 30), provides that the collector shall publish a list of delinquent taxes, etc.; shall expose for sale sufficient of such delinquent taxpayers' real estate to pay the taxes and costs, at public auction, and sell the same to the highest bidder; and that the collector shall receive costs therefor as follows: For each certificate of sale, per folio, 25 cents; for publishing name and amount of taxes due from each delinquent, 50 cents; for filing certificate for tax sale with county recorder, 50

cents. These two provisions stand as a part of the territorial tax system, and were construed in the case of *Hamer v. Weber Co.* (Utah), 37 Pac. 741, not to be in conflict, but that the compensation to be fixed by the court was for other services than the selling of property, and the costs fixed by the amendatory section of 1892 were to reimburse the collector for moneys paid out by him for publishing the delinquent tax list, for fees paid to the county recorder for filing the duplicate certificates, and for his own services in attending the sale, exposing the property, and issuing the certificates in duplicate to the county. The act for the assessment and collection of taxes, of which sections 5, 8, and 9, *supra*, are a part, was approved on the same day as the amendatory section 2030*a*, fixing the costs to be received by the collector for delinquent tax sales; and they must therefore be construed together, as parts of the same act, and both permitted to stand, unless they are irreconcilably conflicting. From a careful reading of these two sections, it seems clear to us that there is no such conflict, and that by section 8, *supra*, it was intended to reimburse the county for the city's proportion of the salary or compensation which the county court should fix and determine to be paid to the county collector, under the provisions of section 2021, *supra*, for all services rendered by him for the city, except attending upon and exposing for sale property of delinquent taxpayers, issuing certificates of sale therefor, and advertising and filing certificates with the county recorder, and that for all such latter services and expenses the collector is entitled to charge and receive the same fees or costs that he is entitled to charge and receive in selling for delinquent territorial and county taxes.

We come now to the question whether there was authority of law for the tax collector, defendant herein, to collect the taxes of the Ogden city school district for the years

1893 and 1894, and to advertise the list of delinquent tax-payers for the school district for such years, and to expose for sale and sell property of the delinquents in payment of such delinquent taxes. The authority of the collector to collect these taxes was before this court recently, in the case of *Board* v. *Brown,* 42 Pac. 1109, and the court held it to be the duty of the collector to collect the taxes, under the authority of section 129 of the school law of 1894 (Sess. Laws 1894, p. 112), which is, so far as the points involved in this case are concerned, identical with section 129 of the school law of 1892, *supra.* We are satisfied with our conclusion reached in that case, and are also of .the opinion that under the language of section 129, *supra,* and of the other statutes and the ordinance referred to in this opinion, it was the duty of the defendant tax collector to advertise the list of all delinquent taxpayers who had failed to pay their taxes due to the Ogden city school district for the years 1893 and 1894, and upon the days of sale to sell the property of such delinquents to the highest bidders, if bids could be obtained, and, if not, then to strike it off to Ogden city at the same time that properties were stricken off for delinquent city taxes, and include such school taxes in the certificates made to Ogden city, and in that way enforce the collection of the school taxes "as other city taxes are collected," as required by section 129 of the school law. *Macklin* v. *Trustees* (Ky.), 11 S. W. 658.

It is evident that the legislature intended that the free public schools established within and for these municipalities should be maintained; that the taxes necessary therefor should not only be levied and collected, if the parties would voluntarily make payment of them, but that in case they should default, and the taxes become delinquent, the collector should proceed to advertise the property and sell it in the same manner, at the same time, and to the

same parties that sales were made for other city taxes; and, as no intention is expressed in the statute that the property should be stricken off to the school district it is a fair and reasonable inference that the legislature intended, by the expression used in the section, that "the taxes should be collected as other city taxes are collected," and also designed to designate this school tax, which was to be used exclusively for schools within the confines of the city, as a city tax, and to impose upon the municipalities the burden of carrying the properties until the taxes and costs could be recovered from them, or title vested in the city thereto, in case redemption should not be made, and that the collector should pay over to the school district the amount of money necessary to settle with the district in full, and without any deduction whatever, as provided in section 7, p. 75, Sess. Laws 1892, and that he should be entitled to receive credit in the settlement of his accounts with the city for the school taxes, as well as for the general city taxes, and costs included in all of such certificates. This, then, places upon the city the further burden of carrying the property upon which there are delinquent school taxes, within the city, as the legislature has already placed upon the county the burden of carrying the properties for the delinquent territorial, territorial school, county, and of all other school districts within their respective counties, except the school districts within the corporate limits of cities of the first and second classes. This seems to have been the evident intention of the legislature, and this construction seems not only to be fair and reasonable, but in accord with the numerous authorities cited upon the hearing of this case, and harmonizes best with the context of the law, and promotes in the fullest possible manner the apparent settled public policy and object of the legislature, and should be adopted.

*The Lizzie Henderson,* 20 Fed. 529; *U. S.* v. *One Raft of Timber,* 13 Fed. 796. In a matter so important as the maintenance of public schools, the courts should incline to uphold, rather than to defeat, the action of the officers. charged with the execution of the law. *Law* v. *People,.* 87 Ill. 403; *People* v. *County Com'rs* (Colo. Sup.), 19 Pac. 894; Desty, Tax'n, 468, 469. To adopt any other construction than the one herein suggested would lead to an absurdity, if not make the provisions of the school law relating to the collection of takes entirely nugatory, and will not be adopted when any other reasonable construction can be found. End. Interp. St. §§ 264, 265; *Manufacturing Co.* v. *McCollock,* 24 Fed. 667.

It follows, then, that the ordinance of the city was not repealed, but was in full force and effect, at the time these sales were made; that it was the duty of the defendant, Hamer, as tax collector, to strike off the said properties to Ogden city, and to issue in duplicate certificates to the city, and include therein the general city taxes and the taxes of the Ogden city school district; that it was the duty of the plaintiff city and its said auditor of public accounts to have given the said tax collector credit in his. account with the said city for all of the city taxes and the taxes of the Ogden city school district, included in all of such certificates, with 25 cents per name—the same being one-half the cost of publishing the name of each delinquent and the description of property named in the 1,127 certificates of sale, where the delinquent taxpayers were not assessed as being the owners of any personal property,— and 50 cents for filing each of such 1,127 certificates, and $3 for the making of each of such 1,127 certificates of sale, with the county recorder, aggregating $20,265.03, and that the defendant tax collector is not entitled to credit for any costs or fees whatever included in any of the 50

certificates of sale wherein the delinquent taxpayers were assessed as being the owners of taxable personal property, nor $3 for making each of the other 1,127 duplicate certificates of sale; that the amount which the city is entitled to receive from the tax collector, Hamer, aggregates $3,718.50, and interest amounting to $97.90, and legal interest on said $3,718.50 from July 11, 1895. The judgment of the lower court is reversed, and the cause remanded, with instructions to enter judgment in conformity with this opinion; costs to be apportioned as to the court may seem just.

MERRITT, C. J., concurs.

BARTCH, J.:

I dissent, except from the proposition that the tax collector had authority to collect the taxes of the Ogden city school district. I cannot agree with my brethren in the other portions of the opinion, or in the judgment announced.